## Case No. 14,372.

UNION MUT. INS. CO. v. COMMERCIAL MUT. MARINE INS. CO.

[2 Curt. 524; [1] 18 Law Rep. 610.]

Circuit Court, D. Massachusetts. Oct. Term, 1855.[2]

MARINE INSURANCE — REINSURANCE — PAROL ACCEPTANCE—SPECIFIC PERFORMANCE—PLEADING IN CHANCERY—ANSWER.

1. If an answer in chancery admit that a proposal for insurance was made and accepted, but adds that no contract was made, the court will not intend that this denial includes any new matter of fact, but will treat it as only containing the respondent's view of the legal consequence of the facts admitted.

2. A parol acceptance of a written proposal for insurance, admitted by the answer, is a binding contract for insurance, in the absence of any statute requiring such contract to be in writing; and there is no such statute in the state of Massachusetts.
[Cited in Walker v. Metropolitan Ins. Co., 56 Me. 384; Somerley v. Buntin, 118 Mass. 287; Sanborn v. Fireman's Ins. Co., 16 Gray, 453.]

3. A court of equity will enforce a contract to make a policy of insurance; and treating that which was agreed to be done as if actually done, will ascertain the amount due, and enforce payment by a decree.
[Cited in Kerstetter v. Raymond, 10 Ind. 203; Walker v. Metropolitan Ins. Co., 56 Me. 382.]

This was a suit in equity to enforce the specific performance of a contract for a policy of reinsurance. The material facts and parts of the answer bearing on the case are set out in the opinion of the court. But as the decision turned mainly on the responses made to the bill, it is here given, as follows:

"The Union Mutual Insurance Company, a corporation duly established by the laws of the state of New York, doing business at the city of New York, in the state of New York, bring this their bill of complaint against the Commercial Mutual Insurance Company, a corporation duly established by the laws of the commonwealth of Massachusetts, doing business at the city of Boston,

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]
2 [Affirmed in 19 How. (60 U. S.) 318.]

in said commonwealth. And thereupon your orators complain and say, that in and by their charter and by the laws of the state of New York, they were, on the second day of November, eighteen hundred and fifty-three, and ever since have been, authorized and empowered to make insurance, among other things, against loss by the perils of the seas and against loss by fire; that your orators on the said second day of November, underwrote and caused one D. McKay to be insured for whom it might concern, payable in the event of loss to. the said McKay, on one eighth of the good ship Great Republic, the said ship having been valued at one hundred and seventy-five thousand dollars, the sum of twenty-two thousand dollars, for the term of one year at and from the second day of November, eighteen hundred and fifty-three, at noon, until the second day of November, eighteen hundred and fifty-four, at noon, against loss from sundry designated risks, and especially from loss from the perils of the seas and from loss by fire. as will more fully appear from a copy hereto annexed and made a part of this bill, of the policy issued by your orators to the said D McKay. Your orators further say, that thereafter the aforesaid insurance so made by your orators upon the Great Republic, and on the night of the twenty-sixth of December, eighteen hundred and fifty-three, the said ship was totally destroyed and lost by fire, one of the perils insured against; that your orators thereupon became liable to pay, and thereafter such loss did pay to the said D. McKay the full sum of twenty-two thousand dollars, the amount so as aforesaid by your orators underwritten. Your orators further say, that after they had insured the said McKay as aforesaid, and before the loss aforesaid of the said ship, and before the commencement of the fire by which its destruction was produced, your orators requested and authorized Charles W. Storey, of Boston aforesaid, insurance broker, to cause and procure your orators to be reinsured in the sum of ten thousand dollars upon the said Great Republic, for the term of six months, against all and singular the risks by your orators theretofore assumed, and especially against loss from the perils of the seas and from fire.

"Your orators further say, that the said Charles W. Storey, as the agent of your orators, in that behalf duly authorized and in their name and behalf. on Saturday, the twenty-fourth day of December, eighteen hundred and fifty-three, made application to the said defendants for the reinsurance by them of your orators upon the said Great Republic, in and for the sum of ten thousand dollars, for the term of six months from the twenty-fourth day of December aforesaid, against such risks as your orators had assumed. and especially against loss from the perils of the seas and against loss from fire; that the said application so made by the said Storey was made at the office and usual place of business of the said Commercial Mutual Marine Insurance Company in Boston; that it was so made in the first instance to the secretary of the defendants, and immediately thereafter, and on the day last aforesaid, to George H. Folger, the president of the defendants, who was duly authorized to receive and act thereupon for the defendants. Your orators further say, that upon the making of the said application the said George H. Folger, after consulting and advising with some person then present, whose name is to your orators unknown, replied to the said Storey, that the defendants would reinsure your orators, in the sum of ten thousand dollars upon the said Great Republic, and would assume the risks proposed for the term of one year, at and for a premium of six per cent. upon the sum to be underwritten; that they would insure against the said risks for the term of six months at and for a premium of three and one half of one per cent. upon the sum to be insured. Your orators further say, that the said Storey, immediately thereafter the said application, communicated to your orators the terms upon which the said defendants would reinsure your orators upon the said Great Republic. Your orators further say, that on the said twenty-fourth of December, your orators upon being advised by the said Storey as aforesaid, directed, authorized, and requested the said Storey, in the name and behalf of your orators, to accept the terms aforesaid, for six months, and to procure for your orators a reinsurance, in accordance therewith, from 24th December aforesaid. Your orators further say, that the said Storey as agent, and in behalf of your orators, on Monday, the twenty-sixth day of the said December, at or about eleven o'clock before noon, at the place of business of the said defendants in Boston, and before any loss or damage had occurred to the said Great Republic, notified the said Folger that your orators had accepted the proposition of the defendants to reinsure your orators for the term of six months from the twenty-fourth of December aforesaid, at noon. Your orators further say, that on the said twenty-sixth of December, and before any loss or damage had occurred to said ship, the above-named Storey, in behalf of your orators. embodied in a paper partly printed and partly written, the terms of the contract of reinsurance, so as aforesaid, on the said twenty-fourth of December. in answer to the aforesaid application, proposed to your orators by the said defendants, and so as aforesaid accepted on the morning of the twenty-sixth of December. Your orators further say, that the said paper was examined. approved, and retained by the said Folger. he in this behalf acting for the defendants. and by him was. in the name of the defendants, assented to, and

thereupon a contract of reinsurance by and between the defendants and your orators was complete and concluded, upon the terms in said paper contained, by force whereof the defendants became and were liable and agreed to and with your orators to pay to them the sum of ten thousand dollars, in the event that the said ship Great Republic should be lost or damaged within six months from and after noon of the said twenty-fourth of December, by the perils of the seas or by fire. Your orators further say, that the said Folger, in behalf of the defendants, and in their name and behalf, agreed with the said Storey, he acting for your orators, that a policy should be prepared and executed by the said defendants to your orators, at the early convenience of the defendants, and delivered to your orators, containing, with other usual and accustomary clauses, the terms of the contract of reinsurance, so as aforesaid concluded by and between your orators and the defendants, and so as aforesaid embodied and set forth in the paper aforesaid. Your orators further say, that the said Storey, on the twenty-sixth of December aforesaid, was authorized, ready and willing, in behalf of your orators, to pay to the defendants, or secure to their satisfaction, at their election, the premium so as aforesaid agreed upon for the said reinsurance, but the same was not then paid, because the defendants were accustomed not to receive the premiums by them required in their contracts of insurance until the preparation and delivery of the policies by them agreed to be issued. Your orators further say, that the said Storey, on the said twenty-sixth of December, immediately upon the conclusion of the aforesaid contract of reinsurance, advised your orators of its completion. Your orators further say, that the said Storey, on Tuesday, the twenty-seventh of December aforesaid, notified the defendants that the said ship had been destroyed by fire and was totally lost, and at the same time asked Edmund B. Whitney, secretary, at the time, of the defendants, in the presence and hearing of the said Folger, at the office of the said defendants, if the policy had been prepared for your orators, to which the said Whitney in the hearing of the said Folger, said no, assigning no reason for the delay, or intimating any refusal to execute such policy. Your orators further say, that the said Storey, on Wednesday, the twenty-eighth of December, called a second time at the office of the defendants and asked for the said policy, to which the said Folger replied, he was in doubt whether the contract was complete and obligatory, as it was made on a day regarded as Christmas day, but he, the said Folger, had not made up his mind about it and did not want to talk on the subject then. Your orators further say, that one F. S. Lathrop, on the thirtieth of January, eighteen hundred and fifty-four, in behalf of your orators, made a draft upon the defendants for the sum of nine thousand six hundred and fifty dollars, the amount of said reinsurance, less the premium, payable at sight, to John S. Tappan, your orators' vice-president, which draft was thereafter, and on the first of February, eighteen hundred and fifty-four, presented to the defendants, which they refused to pay or accept. Your orators further say, that the said Storey, in behalf and in the name of your orators, in that behalf duly authorized, on the twenty-sixth of April, eighteen hundred and fifty-four, at the office of the defendants, made demand upon the aforesaid Folger, for the execution and delivery of the policy so as aforesaid by the said defendants theretofore agreed to be by them executed and to your orators to be delivered, and at the same time tendered to the said defendants the sum of three hundred and sixty dollars as and for premium, interest, and cost of policy, with which request the said Folger, in the name of the said defendants and in their behalf refused to comply. Your orators further say, they have applied to the defendants for a copy of the aforesaid paper so left with them on the twenty-sixth of December, which they refuse to furnish. And your orators well hoped that the defendants would have complied with the reasonable requests of your orators.

"To the end, therefore, that the said defendants may, if they can, show why your orators should not have the relief hereby prayed, and may, and according to the best and utmost of their knowledge, remembrance, information, and belief, full, true, direct, and perfect answer make to such of the several interrogatories hereinafter numbered and set forth as by the note hereunder written they are required to answer, that is to say: 1. Whether upon your information and belief, your orators, before the said twenty-fourth of December, caused D. McKay to be insured upon the ship Great Republic, upon the terms stated in a paper hereto annexed, purporting to be a copy of a policy made by the complainants? 2. Whether, upon your information and belief, the said ship was destroyed and totally lost by fire during the night of December twenty-sixth, eighteen hundred and fifty-three? 3. Whether, upon your information and belief, the complainants have paid as and for a loss upon the said ship the entire sum by them underwritten upon said ship? 4. Whether Charles W. Storey, on the aforesaid twenty-fourth of December, applied at your place of business to you, in behalf of the complainants, to reinsure them in the sum of ten thousand dollars upon the Great Republic? 5. Whether your president, George H. Folger, on the said twenty-fourth of December, stated to the said Storey the terms upon which you would reinsure the complainants the sum of ten thousand dollars on

said ship? 6. Whether, on Monday, the said twenty-sixth of December, during the forenoon, the said Storey, at your place of business, said to your president, that the complainants had accepted the terms proposed by your president on said twenty-fourth of December, for a reinsurance by you for the complainants in the sum of ten thousand dollars upon the ship Great Republic? 7. Whether the said Storey, on the said twenty-sixth of December, left with your president, at your office, a paper or memorandum containing the terms of a reinsurance by you for the complainants in the sum of ten thousand dollars, upon the said Great Republic? 8. Whether the said paper was interlined in any respect or word by your president, in the presence and with the consent of the said Charles W. Storey? 9. Whether your president, on the said twenty-sixth of December, assented to the terms and provisions in said paper contained? 10. Whether, upon your information and belief, the said Storey, on the said twenty-sixth of December, advised the complainants that he had procured a reinsurance for them upon the aforesaid ship, at your office, upon the terms which had been proposed by you on the twenty-fourth of December? 11. Whether, on the twenty-seventh of December, eighteen hundred and fifty-three, the fact that the aforesaid Great Republic had been destroyed by fire, was the subject of conversation at your place of business between your president and the said Storey? 12. Whether, on said twenty-seventh of December, the said Storey inquired of your secretary or clerk if a policy had been prepared for the complainants? 13. Whether any reply was made to said inquiry; if so, what reply was made and by whom? 14. Whether the said Storey was at that time informed that the defendants would not execute or deliver a policy to the use and for the complainants? 15. Whether it is your usual or frequent practice, when you make a contract of insurance and after such contract has been entered into, to require some time for the preparation and execution of the policy, before it is ready for delivery? 16. Whether it is usual or frequent, at your office, to delay the payment of the premium until the policy is prepared and ready for delivery? 17. Whether the complainants, by the said Storey, at any time tendered any sum of money as and for a premium upon a reinsurance by you, for the complainants upon the above-named ship, and thereupon demanded a policy; if so, how much was tendered, and when was it made?

"And your orators pray that the defendants may discover and produce the original paper or memorandum, so as aforesaid made by the said Storey, and dated twenty-fourth of December, eighteen hundred and fifty-three, which was so as aforesaid left with their president at their place of business, on the aforesaid twenty-sixth of December.

And that the said agreement of the defendants to execute and deliver to your orators a policy of reinsurance, according to the terms of the aforesaid paper, and in accordance with the defendant's contract of insurance as aforesaid, may be specifically performed, your orators hereby offering to perform their undertakings in the premises. And that the said defendants may be deemed to pay to your orators the sum of ten thousand dollars, the sum so as aforesaid by them reinsured to your orators, with interest thereon. And that your orators shall have such other and further relief as the case may require. and as shall seem meet to the court, and as shall be agreeable to equity and good conscience. And your orators pray this honorable court to issue a writ of subpoena in due form of law, according to the rules of this court, to be directed to the Commercial Mutual Marine Insurance Company,—a corporation, by the law of Massachusetts, at Boston, commanding them on a certain day and under a certain penalty to be and appear before this honorable court, and to stand to abide and perform such order and decree therein as to this court shall seem meet, and as shall be agreeable to equity and good conscience.

"The Union Mutual Insurance Company, of New York,

"By C. B. Goodrich, Their Attorney.

"C. B. Goodrich, Counsel."

Mr. Goodrich, for complainants.
Choate & Jewell, contra.

CURTIS, Circuit Justice. This is a bill in equity to enforce the specific performance of a contract to make insurance. An outline of those facts, not controverted, or clearly proved is, that on the 24th of December, 1853, Charles W. Storey, as the agent of the complainants, made application to George H. Folger, as the president of the defendants' corporation, for reinsurance on the ship Great Republic. The terms of the application were contained in a paper partly printed and partly written, which was as follows: "Reinsurance is wanted by the Union Mutual insurance Company, New York, for ten thousand dollars, on the ship Great Republic, from December 24th, 1853, at noon, for six months ensuing. This policy is to be subject to such risks, valuations, and conditions, including risk of premium note, as are, or may be taken by the said Union Mutual Insurance Company, and payment of loss to be made at the same time. Three and one half per cent. Binding, ————, President. New York. Dec. 24, 1853." The president, after consulting with one of the directors of the company, declined taking the risk for three per cent. for six months. but offered to take it for three and one half per cent. Mr. Storey replied that was more than he was authorized to give; but whether, he added, that he would transmit the president's offer

to his principals in New York, is among the controverted facts. In point of fact, Mr. Storey did, on the same day, which was Saturday, send to the complainants a telegraphic despatch, in the following words: "To John S. Tappan, Esq., Union Mutual Insurance Company, New York. This risk can be done at three and one half, or six per cent. a year. Charles W. Storey." And on the same day the president of the complainants' corporation answered: "To Charles W. Storey. Do it for six months, privilege of cancelling if sold. John S. Tappan." This answer was received in Boston between six and seven o'clock on Saturday evening, the 24th of December, but did not reach Mr. Storey until about eleven o'clock on Monday, the 26th. As Christmas day fell on Sunday, Monday, the 26th, was generally observed as a holiday by the banks, insurance companies, and many merchants in Boston, but Mr. Storey went to the office of the respondents, and found there their president, who had gone thither to read his letters and newspapers. Neither the secretary nor clerks of the company were present.

At this interview, it is not controverted by the respondents, that Mr. Storey informed the president he was willing to pay three and one half per cent. for the reinsurance described in the paper above mentioned, that he altered the "three" to "three and one half per cent." upon the paper, by adding the figure ½ after the figure 3, and that the president assented to the terms contained in the paper as the terms and provisions of a reinsurance, to be completed and executed by the respondents, by the making and execution of a policy in due form (according to the requisition of the laws of Massachusetts and the by-laws of the defendants' corporation. But the defendants insist that the office of the defendants was not open for business; that the president was there only casually, and not for the transaction of any business; that no contract was then made; and all that was done amounted only to a communication by the president to Mr. Storey, that the terms mentioned in the paper were such as he approved of, and that on the next day he should be able and willing to contract.

It appears that the paper, which I will call the proposal, was left by Mr. Storey with the president, who placed it in his drawer, but not in the particular department of his drawer where accepted proposals are usually deposited, to be taken out by the clerk, who draws up policies thereon. After leaving the office, Mr. Storey, on the 26th, wrote to his principals as follows:—

"Boston, December 26, 1853. John S. Tappan, Esq., Vice-President Union Mutual Insurance Company, New York: Dear Sir,—I have your esteemed two favors of the 24th, and the telegraphic despatch of same date, directing me to effect the reinsurance on the Great Republic, at 3½ per cent. for six months, with privilege of cancelling if the vessel shall be sold. I have, accordingly, made the reinsurance with the Commercial Insurance Company, with the verbal understanding that the policy may be cancelled according to our usage in such cases, which is, to retain enough of the premium to pay for the risk already incurred; as for example, if the ship should arrive at Liverpool and be sold there, they would reserve a fair rate for the passage, if the proportion of the time premium should be insufficient. I have received no encouragement that any further insurance can be made on her, and I believe I have tried every office in the city, except the Manufacturers' and Mercantile, (which only write their own policies,) the Franklin, and the Metropolitan. Very respectfully yours, Charles W. Storey."

The defendants, at the hearing, objected to the use of this letter as evidence. I consider it evidence, to the same extent and for like reasons, that the act of the president in placing the proposal in his drawer, out of the usual place for accepted proposals is evidence. It was an act done by one of the parties, which was immediately connected with the subject-matter of the controversy, and tends to show what the state of mind of the actor then was. On the night of the 26th of December the Great Republic was destroyed by fire, while lying at a wharf in the city of New York, and it is not denied, and is proved, that the complainants were insurers thereon, for the sum of $22,000, the risk having commenced on the second day of November, 1853, at noon; and that they have paid this loss.

The first question which I have to determine is, whether an agreement for a policy was concluded by and between Mr. Storey and the president during their interview on the 26th of December. Such an agreement is stated in the bill. The passages in the answer, bearing directly on this question, are as follows: "That on or about the twenty-fourth day of December, eighteen hundred and fifty-three, Charles W. Storey called at the office of this defendant, in Boston, and presented the application for insurance, a true copy of which is annexed hereto, and desired to obtain reinsurance upon the ship Great Republic, for the amount of ten thousand dollars; that at that time the figure '3' upon said application stood alone, and the president of this defendant declined to take the risk at 3 per cent. for six months, and informed Mr. Storey that the risk was worth 3½ per cent. for six months, and at that rate he was willing to take the risk; that Mr. Storey then said he was not authorized to give so much, and could not do so, and left this defendant's office without any expressed intention of returning, and carried away with him the said application. That on the twenty-sixth day of said December, being Monday, the office of this defendant was not open for business; that the twenty-fifth day of December, being Sunday, the said twenty-sixth day of December was generally observed as Christ-

mas day, and as a holiday, and the banks, insurance offices, offices of brokers and the stores of merchants were closed, and no business, was transacted on that day, and the office of this defendant was closed for business on that day, and neither the secretary of this defendant, nor any of its clerks, nor any of its directors, were at its office; but its president, George H. Folger, went to its office for a few minutes, but not on the business of this defendant, and while he was there, Mr. Story again called, and again presented the application for reinsurance aforesaid, and said he was willing to give 3½ per cent. for six months for said reinsurance, and the figure '½' was then added to the figure '3' by him; that said Folger assented to the terms in said paper contained, but informed said Storey that no business was done at this defendant's office on that day, and that the next day he would attend to it, and said Folger thereupon took said paper from said Storey, and retained the same in the office of this defendant. This defendant denies that any contract for reinsurance was entered into between this defendant and the said complainant."

To a special interrogatory in the bill the defendants further answer: "That its president did assent to the terms and provisions in said paper, as the terms and provisions of a reinsurance to be completed and executed by this defendant, by the making and execution of a policy in due form according to the requisitions of the laws of Massachusetts and the by-laws of this defendant, but they were not assented to as a present insurance." An answer to a bill in equity is to be considered in two aspects,—as pleading and as evidence. Viewed as pleading, its admissions are conclusively binding on the defendants. And if their language is so ambiguous as to be fairly susceptible of two meanings, that interpretation is to be put upon them which is least favorable to the respondents. Turning to the first passage above cited from the answer, I find it admitted, that, on Saturday, Mr. Storey had been informed by the president that the defendants were then willing to take the risk at three and one half per cent. for six months, which Mr. Storey then declined; that on Monday he again presented the application for reinsurance, said he was willing to give three and one-half per cent., added "½" to the "3" which was on the paper, and the president assented to the terms contained in the paper, but informed Mr. Storey that no business was done at the office on that day, that on the next day he would attend to it, and thereupon the president took the paper from Mr. Storey, who departed. leaving it in his possession.

Taking this to be a precise and full statement of what then occurred between the parties, the first inquiry is, what had Mr. Storey a right to understand was meant by the president, when he informed Mr. Storey that "no business was done in the office on that day, and the next day, he would attend to it?" Attend to what? To receiving and assenting to the proposal for insurance? I think this is not the fair meaning, and that Mr. Storey had a just right to understand it otherwise; for the proposal was, in fact, then and there received and then and there assented to. Having already received and assented to the proposal, when he spoke of not doing business on that day, and of attending to it the next day, I consider the effect of what he said was, not that he would do on the next day what he had just before done; but something which remained to be done; and that what was to be attended to on the next day, was not something already attended to and completed, and which, if attended to on the next day, would only be a repetition of what had been done, but something which was to follow thereon, and complete the transaction. Having already received and assented to the proposal, what was to be attended to on the next day, was an accepted proposal, and what was postponed was the necessary action on an accepted proposal. Such, I think, is the just import of what is here stated, and that Mr. Storey had a right so to understand it; and if the president intended Mr. Storey should not so understand it, he was bound to apprise him, that, although he assented to his proposal, he must not consider that any such assent had been given, but must return the next day and renew it. It is not suggested in the answer that any such intimation was given, or even that it was expected by the president that the proposal would be again made, or, that it being left with him as a continuing proposal, he was on the next day to take it up, as one not yet assented to, and then decide whether he would assent to it or not. Nor is there the least ambiguity, taking into view the passage secondly above cited from the answer, as to what was actually intended by the president's assent to the proposal. For, in answer to the ninth interrogatory in the bill, it is there admitted, "that the president did assent to the terms and provisions in said paper, as the terms and provisions of a reinsurance, to be completed and executed by this defendant, by the making and execution of a policy in due form according to the requisitions of the laws of Massachusetts and the by-laws of this defendant." Now let us suppose that these words had been written on the proposal, and that there had been added thereto, "but no business is done at the office this day, and to-morrow it will be attended to," and that the president had signed his name to this writing, I could have no hesitation in saying that this amounted to a promise on the part of the company to issue a policy in conformity with the proposal; and that what the parties had agreed to de-

fer, was not their action on a mere proposal, but their further action on a proposal accepted. That having, in plain language, made a contract for a policy, and fixed all its necessary terms and conditions, including the premium to be paid, the draft and signatures of the policy and the delivery thereof were to be deferred till the next day. It is true these words are not found on the paper. But they are found in the answer; and they evidence what was done, in a manner as conclusive, as if written on the proposal itself, or on another paper referring to and identifying the proposal. They are written on another paper, which refers to and identifies the proposal, and that paper is under the seal of the corporation, and is part of the record of this case. It is true the answer, in terms, denies "that any contract for reinsurance was entered into between this defendant and the complainant." But whether what was, in fact done, amounted to a contract for reinsurance, is a question of law.

This answer undertakes to state what was done and said between the parties. It adds a denial that any contract was entered into. I cannot treat this general denial as importing or including any other matter of fact than those stated. If such existed, it should have been added to the statement of what was done and said. I construe it as intended to put in issue the legal question, whether the facts stated will enable the court to say. a contract was made. The answer also subjoins, to the admission of the president's assent, a denial that the terms of the proposal were assented to "as a present insurance." Here, also, it is not made to appear that any matter of fact is intended to be denied, or that it is meant to assert that the president when he assented to the proposal, qualified his assent by a declaration that the terms were not assented to as a present insurance. Nor is there the least reason to suppose from any other part of the answer, or from any evidence in the cause, that any such qualification was, in point of fact, made. But passing over these considerations, and allowing to the denial the fullest extent that can be claimed for it, it does not conflict with the conclusion that a contract for a policy was made. There can be no pretence that a then present insurance was effected. All that is claimed by the bill is, that the parties contracted for a policy, which was subsequently to be issued. The insurance was not to be actually effected until the policy should be issued. Whether, when issued, it would relate back so as to cover risks exhibiting on the 26th of December, would depend on the stipulations of the policy. In this case the proposal was for reinsurance from December 24th, at noon. The risks then commencing, the defendants agreed, that by a policy to be afterwards issued, they would assume. In entire accordance with all this, is the denial that insurance was in fact made

on the 26th; for it was then only agreed to be made. And it is only in this way that the answer can be relieved from a charge of inconsistency. To say, in the same sentence, that on the 26th, the defendants assented to the proposal to take the usual risks on the Great Republic from the 24th, at noon, for a period of six months, in consideration of a premium of three and one half per cent., and that the defendants were to execute on their part, by issuing a policy accordingly, but that they did not agree to make insurance covering the risks existing on the 26th of December, would be a plain contradiction in terms. In my opinion, the answer cannot be allowed to have such effect.

I have not been unmindful of the grounds relied on by the defendants, and I will state briefly the views I entertain of the principal of those grounds. It was urged, that if Mr. Storey had believed that a contract was made, he would have signed the proposal and insisted on the signature of the president; and if the president had understood that he was making a contract, he would have put his name to the paper. As respects Mr. Storey, he testifies that, though he had effected upwards of three hundred reinsurances for the complainants during the three years then last past, he had scarcely ever signed a proposal; and that only one, or perhaps two, of the presidents of ten different insurance companies, with whom he had transacted this business, ever signed an application for insurance when accepted. With the respondents he had done no business before the time in question. As respects the president, the usage stated in the answer is as follows: "That it is the usual and frequent custom of this defendant's office. to receive written or printed applications for insurance, which contain the subject-matter, the voyage, the risks, the premium, and by whom insurance is proposed, and for whom; which, if satisfactory, are assented to by its president and handed to the clerk, as the basis for filling up a blank policy to be executed in proper form according to law; that upon the execution of the policy and the making of the premium note agreed on, the insurance is complete; but that until the filling up and execution of the policy by the proper officers, no insurance is complete or binding upon this defendant;—but when similar agreements have been made as to the terms of insurance, and when time is required for filling up the policies, if the applicant desires the insurance to commence immediately. the application is signed by this defendant's president, and the insurance is considered to take effect immediately; and this defendant says it is usual and frequent after such a contract of insurance as the last described has been entered into, to take time to fill up and execute the policy." This is not supported by any evidence. All that relates to it is found in the answer of the president to the twenty-sixth interrogatory. To the twenty-sixth he says: "The only custom I

know of obtaining in Boston, in regard to the binding nature of unsigned applications is, the executing and delivering of the policy itself; and while they remain in the possession of the office, any alteration may be made therein. This is where no agreement for insurance has been mutually signed." But if the usage existed precisely as stated in the answer, it would not prove, that a binding contract for a policy was not made, when the proposal was made and accepted. It is true, it might only amount to a contract to issue a policy on the next day, and the risks might attach only on the date of the policy; and if so, in effect, it would not be a present insurance or an agreement to make one. But no usage can be effectual, to render void an express contract for a valuable consideration. And assuming, what I shall presently consider that a parol contract for a policy is valid in law, I do not perceive what effect could be allowed to the usage stated in the answer, beyond this: that unless there be an express stipulation that the risk is to begin at some particular time, it is to begin at the date of the policy. Here there was an express stipulation. But it is not necessary to determine any thing on this point; because the defendants rely on this usage only to show that the president did not intend to make a binding contract. But parties to such a transaction must be conclusively presumed to intend to do what they actually do, and when the answer admits, that the president accepted the proposal, and does not assert that he did or said any thing which was sufficient to prevent such acceptance from amounting to a contract, no further inquiry as to his intention is necessary or proper. The question is proposed to the president, on cross-examination: "Seventh—Whether or not, on the 26th of December, you said to Storey that no insurance would be considered as made, until the policy or some other instrument should be signed by the officers of the defendants?" To the seventh cross-interrogatory, he says: "I don't recollect to have so stated."

The view I have taken of the answer dispenses with the necessity of an examination of the evidence. As I have already stated, the defendants are bound by that answer. But a careful examination of the evidence has strengthened the conclusions formed from the answer; and the result at which I have arrived upon this part of the case is, that a concluded parol agreement for a policy, in conformity with the proposal, was made on the 26th of December. It remains to inquire whether such an agreement can be enforced by a court of equity. That the court should be cautious in the exercise of such a power, I have no doubt. Specific performance is never decreed while reasonable doubt hangs over the transaction. And especially should this rule be observed. where the right of the complainant rests upon an alleged oral agreement. But where the proposal is in writing, and contains all the necessary terms of the

bargain; and where, as here, it is admitted by the answer, that the proposal was made and accepted, the absence of the signature of the president is a formal defect merely. The admission in the answer that he actually assented to the proposal, is as satisfactory evidence of his assent, as would be afforded by his signature to the paper. Unless, therefore, there is some technical rule of law, which requires his signature, its absence is not important in this case. It was at one time much questioned whether the complainant was not entitled to the specific performance of a contract which a statute required to be in writing, and signed by the party charged, if the defendant confessed an oral contract. It is now settled, that he is not, if the defendant insists on the defence given by the statute. Mitf. Eq. Pl. (by Jeremy) 266–268; Story, Eq. Pl. § 763, and notes. But when an oral contract is confessed, and the statute not insisted on, specific performance is decreed; à fortiori, where there is no statute requirement, and where the difficulty is only in making such proof, as satisfies the conscience of the court. It is insisted however, that the contract now in question is required, both by the law merchant and the statute law of Massachusetts, to be in writing. The defendant's counsel has, in his learned argument, adduced abundant authority to show, that in practice, insurance is always made by a written contract, denominated a policy, and that, by many commercial codes, it is expressly required, that the contract of the insurer shall be in writing. And he refers to Mr. Phillips's and Mr. Duer's treatises to show, that they consider that an oral contract for a policy is not binding. But the question whether such a contract is valid, must be determined. in the absence of any statute, by the common law; and I am not aware of any grounds upon which it can be maintained, that the common law requires a contract for a policy of insurance to be in writing. It is not sufficient to say that by the law merchant the insurance must be effected by a written policy. By the law merchant a foreign bill of exchange must be in writing; but I do not doubt that an action will lie on an oral promise, for a valuable consideration, to deliver one in payment for money lent. So a bond must be in writing. and under seal; but a contract to deliver a bond is not required by the common law to be in writing. Land can only be conveyed by a deed, but a parol contract for a deed of land was undoubtedly valid at the common law, and, as we have seen, is enforced now, in equity, when the statute of frauds is not insisted on.

The maritime law of all commercial countries requires the title to vessels to be evidenced by written documents. But an oral contract of sale of a vessel. if delivery be made, or the price paid, transfers the title. And an executory contract to convey. can undoubtedly be enforced. if the statute of frauds is complied with. In Massachusetts,

a corporation can make insurance only by a policy in writing, signed by its president, and countersigned by its secretary. But there is no statute of frauds which includes contracts for policies. It was forcibly urged, that as the statute of Massachusetts requires policies to be signed by the president, and countersigned by the secretary of the corporation, it cannot be supposed that the legislature intended that an oral contract for a policy should bind the company. But it was decided by the supreme court of Massachusetts in New England Marine Ins. Co. v. De Wolf, 8 Pick. 56, that this provision, in an act incorporating an insurance company, applied only to the mode of making a policy, and did not apply to a contract by the company to pay the amount of a loss to an assignee of a policy. Indeed the usage of the defendants, and so far as appears of all other insurance companies here, is to treat this statute provision as inapplicable to contracts for policies; for such contracts are never countersigned by secretaries of the company. The requirement of the signature of the president and secretary is limited to the policy. There may be strong reasons for extending it to contracts for a policy; but it not having been so extended, I have no right to make a statute of frauds for the case. In Sandford v. Trust Fire Ins. Co. 11 Paige, 547, the chancellor did not find it necessary to decide this question, but he intimated an opinion that he should have held a parol contract for insurance valid, if one had been proved. In Hamilton v. Lycoming Mut. Ins. Co., 5 Barr [5 Pa. St.] 339, the supreme court of Pennsylvania held an oral contract for insurance to be binding on the insurers. This seems to me to be in conformity with the common law, and I find nothing in any statute of the state of Massachusetts to conflict with it.

The results at which I have arrived, are: 1. That the answer admits, that the complainants through their agent, made a proposal in writing for insurance, which contained all the necessary terms of a valid contract for a policy; and that the defendants accepted this proposal. 2. That this acceptance made a legal contract between the parties, which it is the duty of the court to order to be specifically performed. 3. That as it is admitted, that the complainants would have a good cause of action at law upon a policy, if issued in pursuance of the contract, there should be decreed to them in this suit, what they would be entitled to recover, if a policy were issued and that which was agreed to be done were actually done. Let a decree be drawn up to this effect.

[Upon an appeal to the supreme court, the above decree was affirmed. 19 How. (60 U. S.) 318.]