PEOPLE'S UNITED STATES BANK v. GILSON et al.

(Circuit Court of Appeals, Eighth Circuit. April 29, 1908.)

No. 2,690.

1. POST OFFICE—FRAUD ORDER—POSTMASTER GENERAL'S DECISION OF QUESTION OF FACT NOT REVIEWABLE.

In a doubtful case within his jurisdiction in the absence of fraud or a gross mistake of fact where there is some evidence which is satisfactory to the Postmaster General to sustain a fraud order issued under sections 3929 and 4041 of the Revised Statutes, as amended by Act Sept. 19, 1890, c. 908, §§ 2, 3, 26 Stat. 466, and by Act March 2, 1895, c. 191, § 4, 28 Stat. 964 (U. S. Comp. St. 1901, pp. 2686, 2688, 2749), his decision of a question of fact upon which the order is founded is conclusive, and it will not be reviewed by the courts.

2. SAME—COURT MAY REVIEW AND ENJOIN FOR LACK OF JURISDICTION, ERROR OF LAW OR GROSS MISTAKE OF FACT.

A court of equity may enjoin the enforcement of a fraud order (a) where the case was not within the jurisdiction of the Postmaster General as where the beneficial effect of the scheme was matter of opinion and not of fact; (b) where the issue of the order was induced by an error of law into which the Postmaster General fell; and (c) where its issue

was caused by fraud or a gross mistake of fact so that the order was "palpably wrong."

3. SAME—ISSUE OF ORDER WITHOUT EVIDENCE TO SUSTAIN IT ERROR OF LAW.
   The issue by the Postmaster General of a fraud order upon facts admitted, conceded, or established beyond dispute which do not sustain it, or in the absence of any evidence to sustain it, is an error of law remediable in the courts.

4. EQUITY—ADMISSIONS—HEARING ON BILL AND ANSWER—HEARING ON BILL, ANSWER AND REPLICATION.
   Where a case is set down for hearing on bill and answer, all the facts well pleaded in the answer are taken as true, whether responsive to the bill or not. But, where a case is set down for hearing on bill, answer, and replication, only those averments of the answer which are responsive to the bill are taken as true. All allegations in avoidance or justification are denied by the replication, and are taken as untrue.

   [Ed. Note.—For case in point, see Cent. Dig. vol. 19, Equity, §§ 711, 712.]

5. SAME—PLEADINGS—GENERAL DENIAL INSUFFICIENT BEFORE, BUT GOOD AFTER, REPLICATION.
   While a general denial in an answer of all the allegations of the bill not expressly admitted, or a negative pregnant, is insufficient on exceptions to the answer, all objections to the forms of denials are waived under equity rule No. 61 by the filing of a replication, and upon a hearing on bill, answer, and replication they do not constitute admissions of any of the averments they were interposed to deny. Where the essential equities of a bill are challenged by a general denial upon such a hearing, the complainant is entitled to no relief.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 653–659, 712.]

(Syllabus by Sanborn, Circuit Judge; Adams, Circuit Judge, and Philips, District Judge, concurring in result.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

For opinion of lower court, see 140 Fed. 1.

Shepard Barclay (Carter, Collins & Jones and Thomas T. Fauntleroy, on the brief), for appellant.

Henry W. Blodgett (Truman P. Young, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree which dismissed a bill exhibited by the People's United States Bank, a corporation of the state of Missouri, against Frank Wyman, the postmaster at St. Louis, and his subordinates, to enjoin them from marking fraudulent and returning to the senders letters and other packages of mail directed to it which contained valuable drafts and checks, in obedience to an order to that effect issued by the Postmaster General on July 6, 1905. The complainant charged in the bill that it was carrying on a legitimate and lucrative banking business through the mails; that there was never any evidence before the Postmaster General, except certain secret reports of post-office inspectors which the Postmaster General refused to divulge; that it was engaged in conducting any scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations, or prom-

ises, and that it was not in fact so engaged; that at a hearing before the Assistant Attorney General for the Post-Office Department, before the fraud order was issued, these secret reports were withheld, and inspection of them was denied to the complainant, there was no other evidence that the complainant was guilty of participation in such a scheme, and all the evidence at that hearing was, and the conceded and admitted facts at that hearing were, that the complainant was not engaged in any such scheme or device, but that nevertheless the Postmaster General issued the order whereby, unless its execution were stayed by the court, some of the complainant's property, consisting of remittances by checks, drafts, and post-office money orders through the mails would be confiscated, some of it would be returned to senders, and its business and reputation would be destroyed, to its irreparable injury, in violation of the fourth, sixth, and fourteenth amendments to the Constitution. The defendants answered that the order of the Postmaster General was issued upon all the evidence taken both before and at the hearing before the Assistant Attorney General, both that in support and that in refutation of the charge that the bank was engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises; that all this evidence taken together was satisfactory to the Postmaster General that the bank was so engaged; that it was in fact thus engaged; that the defendants were simply obeying the order of the Postmaster General, and they denied every allegation of the bill which was not thus expressly admitted. A general replication was filed, the case was set down for hearing on July 3, 1907, and on that day the court dismissed the bill.

Sections 3929 and 4041 of the Revised Statutes as amended by Act Sept. 19, 1890, c. 908, §§ 2, 3, 26 Stat. 466, and by Act March 2, 1895, c. 191, § 4, 28 Stat. 964 (U. S. Comp. St. 1901, pp. 2686, 2688, 2749), provide that "the Postmaster General may upon evidence satisfactory to him that any person or company is engaged in conducting any lottery, gift enterprise or scheme for the distribution of money, or of any real or personal property by lot, chance, or drawing of any kind, or that any person or company is conducting any other scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses or promises, instruct postmasters" at any postoffice at which letters to such a person or company arrive to mark them fraudulent and to return them to the senders. The Supreme Court has had occasion to consider these acts of Congress in two cases, in the American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 107, 108, 109, 110, 23 Sup. Ct. 33, 47 L. Ed. 90, and in Public Clearing House v. Coyne, 194 U. S. 497, 506, 509, 24 Sup. Ct. 789, 48 L. Ed. 1092. In the former case the Postmaster General had found, upon evidence satisfactory to him, that a scheme or device for obtaining money through the mails by means of pretenses, promises, and representations that physical ills could be benefited and cured by the proper exercise of the mind was a scheme denounced by these acts of Congress, and had issued an order commonly called a "fraud order" against the company which practiced it, whereby he directed the local postmaster to mark the letters

sent to the complainant which contained checks and drafts for money "Fraudulent," and to return them to the senders. The Supreme Court held (1) that, where the beneficial effect of the scheme or device in question as in that case is a matter of opinion not susceptible of proof as an ordinary fact, the Postmaster General has no lawful jurisdiction or authority to issue a fraud order (pages 106, 107 of 187 U. S., page 38 of 23 Sup. Ct. [47 L. Ed. 90]); (2) that, where the Postmaster General is induced to issue a fraud order by an error of law, his action is reviewable, and the execution of his order may be enjoined by the courts, citing Burfenning v. Chicago, etc., Railway Co., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175, Johnson v. Drew, 171 U. S. 93, 99, 18 Sup. Ct. 800, 43 L. Ed. 88, and Gardner v. Bonestell, 180 U. S. 362, 21 Sup. Ct. 399, 45 L. Ed. 574, which apply the same rule to the Land Department (page 108 of 187 U. S., pages 38, 39, of 23 Sup. Ct. [47 L. Ed. 90]); (3) that if there is no evidence before the Postmaster General of the violation of the federal law, or if the admitted, conceded, or established facts before him show no such violation. the Postmaster General's determination that the evidence of such violation is satisfactory to him and his issue of a fraud order thereon is a pure mistake of law remediable by the courts (pages 109, 110 of 187 U. S., page 39 of 23 Sup. Ct. [47 L. Ed. 90]); and (4) that, where the Postmaster General issues a fraud order without jurisdiction or by reason of an error of law, and thereby stops the delivery of letters which contain valuable inclosures, he violates the property rights of the person or company whose letters are thus withheld (page 110 of 187 U. S., page 39 of 23 Sup. Ct. [47 L. Ed. 90]).

In Public Clearing House v. Coyne, 194 U. S. 497, 510, 515, 24 Sup. Ct. 789, 48 L. Ed. 1092, the Postmaster General had held that a scheme or device for obtaining money through the mails by means of pretenses, promises, and representations that persons who remitted $3 enrollment fee and $1 per month for 60 months would receive moneys in return proportionate to the increase of the membership of the association they joined, subject to numerous conditions, whereby the scheme "must ultimately and inevitably result in failure" and in loss to the great majority of the members (page 515 of 194 U. S., page 796 of 24 Sup. Ct. [48 L. Ed. 1092]), was not a lottery, but a scheme or device denounced by the acts of Congress. The court below had reviewed the finding of fact of the Postmaster General and had found that it was not such a scheme, but that it was a lottery. The Supreme Court upheld the constitutionality of these acts of Congress, "the only reservation being that the person injured may apply to the courts for redress in case the Postmaster General has exceeded his authority or his action is palpably wrong," (page 509 of 194 U. S., page 794 of 24 Sup. Ct. [48 L. Ed. 1092]); and it said:

"Inasmuch as the action of the postmaster in seizing letters and returning them to the writers is subject to revision by the judicial department of the government in cases where the postmaster has exceeded his authority under the statute (School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90), we think it within the power of Congress to intrust him with the power of seizing and detaining letters upon evidence satisfactory to himself, and that his action will not be reviewed by the court in doubtful cases." Pages 509, 510 of 194 U. S., page 794 of 24 Sup. Ct. (48 L. Ed. 1092).

It also held that there was no error in the finding by the court below that the Postmaster General was mistaken in his finding of the fact that the plan was a scheme to obtain money by false representations and promises and in the finding of the court that it was in fact a lottery and not such a scheme. It sustained the fraud order because the plan constituted a lottery. Pages 512, 515 of 194 U. S., pages 795, 796, of 24 Sup. Ct. (48 L. Ed. 1092). A significant fact in this case is that the Supreme Court affirmed the review by the lower court of the Postmaster General's finding of fact, approved its reversal of that finding, and declared that such a review would not be made in doubtful cases, but only when his finding was "palpably wrong." Pages 509, 510 of 194 U. S., pages 793, 794 of 24 Sup. Ct. (48 L. Ed. 1092). These decisions are in exact accord with the settled principles of law which govern the decisions and acts of the Land Department and of the other executive departments of the government upon which quasi judicial powers are conferred by acts of Congress and from them, and the decisions cited therein and below, these conclusions may be safely drawn.

In a doubtful case within his jurisdiction in the absence of fraud or a gross mistake of fact, where there is some evidence which is satisfactory to the Postmaster General to sustain a fraud order, his decision of the question of fact upon which the order is founded is conclusive, and it will not be reviewed by the courts.

But his authority, like that of every other executive officer upon whom quasi judicial power is conferred by acts of Congress, is neither unbounded, arbitrary, nor discretionary. It is limited, and its exercise is governed by the acts of Congress which confer it and by the laws of the land, and his violation or disregard of either is remediable in the courts. If he is induced to issue a fraud order in a case beyond his jurisdiction, or by reason of an error of law in a case within his jurisdiction, and its issue in the absence of any evidence before him to sustain it, or upon facts found, conceded, or established without dispute which do not sustain it is an error of law, or if he is caused to issue it by reason of fraud or gross mistake of fact which renders its issue palpably wrong, the victim of the order is not remediless. He may avoid the decision of the Postmaster General and enjoin the execution of the order in a court of equity on the ground (1) that it was issued in a case which was not within the jurisdiction of the Postmaster General (American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 107, 23 Sup. Ct. 33, 47 L. Ed. 90); (2) or on the ground that it was issued in the absence of any evidence to sustain it or upon facts found, conceded, or established beyond dispute which do not sustain it, or that its issue was induced by any other error of law; or (3) that through fraud or a gross mistake of fact the Postmaster General fell into a misapprehension of the facts which caused him to issue an order which was palpably wrong (American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 107, 108, 109, 110, 23 Sup. Ct. 33, 47 L. Ed. 90; Public Clearing House v. Coyne, 194 U. S. 496, 509, 510, 512, 24 Sup. Ct. 789, 48 L. Ed. 1092; Bates & Guild Co. v. Payne, 194 U. S. 106, 111, 24 Sup. Ct. 595, 48 L. Ed. 894; Noble v. Union River Logging R. R. Co., 147 U. S.

171, 172, 13 Sup. Ct. 271, 37 L. Ed. 123; Wisconsin Central R. R. Co. v. Forsythe, 159 U. S. 46, 61, 15 Sup. Ct. 1020, 40 L. Ed. 71; Rosenberger v. Harris [C. C.] 136 Fed. 1001, 1003; Missouri Drug Co. v. Wyman [C. C.] 129 Fed. 623, 629; Harris v. Rosenberger, 145 Fed. 449, 76 C. C. A. 225; Wallace v. Adams, 74 C. C. A. 540, 515, 143 Fed. 716, 721; James v. Germania Iron Co., 46 C. C. A. 476, 479, 107 Fed. 597, 600, and cases there cited). The burden was on the complainant in this case to establish that it would suffer irreparable injury because the Postmaster General had issued the order, of which it complained, either without jurisdiction, or by reason of an error of law, or because of a gross mistake of fact which made the order palpably wrong. The first question in the case is, therefore: Did the complainant establish these essential facts by the pleadings, for it introduced no evidence?

The replication was filed on November 24, 1905. By consent of parties six orders were made by the court from time to time which extended the time for complainant to take its proofs until June 2, 1907. On June 20, 1907, the court below denied a motion of the complainant for a further extension of time to take its testimony and a motion of the defendants for a decree upon the pleadings, and set the case down for hearing on bill and answer on July 3, 1907. On the day last mentioned it rendered its decree of dismissal. The court erred in setting the case down for hearing on bill and answer because the complainant had filed and had not withdrawn its replication, and a replication works a radical change in the legal effect of the pleadings. When a case is set down for hearing on bill and answer, all the facts well pleaded in the answer are taken as true, whether responsive to the bill or not (Perkins v. Nichols, 11 Allen [Mass.] 542; American Carpet Lining Co. v. Chipman, 146 Mass. 385, 16 N. E. 1; Banks v. Manchester, 128 U. S. 244, 9 Sup. Ct. 36, 32 L. Ed. 425); but, where it is set down for hearing on bill, answer, and replication, only those averments of the answer which are responsive to the bill are taken as true. All allegations therein in avoidance or justification are denied by the replication, and are taken as untrue. Van Dyke v. Van Dyke, 26 N. J. Eq. 180, 181; Story's Equity Pleading (10th Ed.) p. 418, note 3. But this is a suit in equity. It must be heard anew in this court. A wrong reason is not fatal to a right decree and the question recurs whether or not the decree was right upon the bill, answer, and replication.

Counsel for the complainant suggest that the verification of the answer is defective, but an answer under oath was waived by the complainant, the verification is not material to the issues here, and the answer will be treated as without verification. Where the complainant waives the oath, an unsworn answer which denies material averments of the bill puts the complainant to his proof thereof, and he is entitled to relief only upon the allegations of the bill which are admitted by the answer. Beach's Modern Equity Practice, § 634; Union Bank v. Geary, 5 Pet. (U. S.) 99, 112, 8 L. Ed. 60; Reese v. Barker, 85 Ala. 474, 5 South. 305, 306; Winter v. City Council, 83 Ala. 589, 3 South. 235, 238. The gravamen of the bill was that the complainant was engaged in a prosperous and lucrative banking busi-

ness, that irreparable injury would be inflicted upon it by sending back to the remitters the checks, drafts, and money orders which were on the way to the bank through the mails and by the ruin of its reputation and business by the fraud order which was issued without the jurisdiction of the Postmaster General, by reason of an error of law and gross mistake of fact which made it palpably wrong. The defendants admitted by their answer that the order was issued by the Postmaster General; that they were obeying it; that there was a hearing before the Assistant Attorney General on June 16, 1905, before the order was issued; that there was no evidence that the complainant was engaged in any unlawful scheme or device for obtaining money through the mails at that hearing, or before the Postmaster General, except the secret reports of the inspectors, and that those reports and the evidence in refutation of the charge presented by the complainant constituted the evidence upon which the Postmaster General issued the order, and that this evidence was satisfactory to him. The answer contained no other admissions; and it closed with this denial:

"And these defendants deny each and every allegation in complainant's bill contained, save and except those that are hereby expressly admitted to be true."

The answer contained affirmative averments that E. G. Lewis, in the name of the bank, made false representations and promises which induced many persons to send more than two millions of dollars to the complainant and Lewis, a portion of which Lewis had converted to his own use, to the use of the Lewis Publishing Company and of the University Heights Realty & Development Company. But these allegations were and are futile because they were in avoidance of the charge of the bill. They were denied by the replication, and no evidence was introduced to prove them. When a suit in equity is heard on bill, answer, and replication the answer must be taken as true in all matters of confession responsive to the bill, but all matters in avoidance are denied by the replication, and they are not available to the defendant unless proved by evidence. Van Dyke v. Van Dyke, 26 N. J. Eq. 180, 181; Humes v. Scruggs, 94 U. S. 22, 24, 24 L. Ed. 51; Jacks v. Nichols, 5 N. Y. 178; Wilkinson v. Bauerle, 41 N. J. Eq. 635, 7 Atl. 514; Lucas v. Bank of Darien, 2 Stew. (Ala.) 280.

But no relief may be lawfully granted to the complainant upon the pleadings in equity, except upon allegations of the bill that are admitted by the answer. Did the general denial in the answer admit the substantial equities of the bill? Did it admit the averments of fact to the effect that the complainant was conducting a legitimate and lucrative banking business, and that the execution of the fraud order would inflict irreparable injury upon it? If it did not, these averments were not admitted at all, and, as there is no proof of them, the complainant was not entitled to a decree even if the fraud order was beyond the jurisdiction of the Postmaster General, or was induced by an error of law, or by fraud, or by a gross mistake of fact, which made it palpably wrong. The admission or the proof of resulting irreparable injury, continuing or threatened, was as essential to

the injunctive relief sought as the admission or proof of causal wrong. Darragh v. H. Wetter Mfg. Co., 23 C. C. A. 609, 619, 78 Fed. 7, 17.

Complainant's counsel insist that the general denial is an admission of all the averments of the bill which are not otherwise expressly admitted, although it in terms denies them. They argue and cite the following authorities to sustain their contentions: (1) That a general interrogatory in a bill is sufficient to require the defendants to answer all the charges it contains (Equity Rule No. 40; McClaskey v. Barr [C. C.] 40 Fed. 559, 561); (2) that a denial of a conclusion of law in an answer which contains an admission or averments of facts which establish that conclusion, is an admission of the conclusion (Union Mutual Ins. Company v. Insurance Co., 24 Fed. Cas. 609 [No. 14,372]; Adams v. Adams, 21 Wall. [U. S.] 185, 190, 22 L. Ed. 504; Caldwell v. Carrington, 9 Pet. [U. S.] 86, 103, 9 L. Ed. 60; Bartlett v. Gale, 4 Paige, Ch. [N. Y.] 503, 507; Robinson v. Stewart, 10 N. Y. 189, 194); (3) that an averment in a bill not denied in any way in an answer is admitted (Sanborn v. Adair, 29 N. J. Eq. 338, 345; Lee v. Stiger, 30 N. J. Eq. 610, 611); and (4) that in equity the complainant is entitled to a specific answer to every material averment of his bill in order that he may know what is admitted and what he will be required to prove, and a general denial or a negative pregnant is insufficient (Holton v. Guinn [C. C.] 65 Fed. 450, 451, 452; McClaskey v. Barr [C. C.] 40 Fed. 559, 561; Reed v. Insurance Co., 36 N. J. Eq. 146, 152; Woods v. Morrell, 1 Johns. Ch. [N. Y.] 103, 106; Pierson v. Ryerson, 5 N. J. Eq. 202, 203; Story's Equity Pleadings [10th Ed.] § 852). The first three contentions are conceded without qualification. The fourth proposition states a general rule which governs when invoked in due time and in the proper manner; but does it prevail after replication? In every case cited by counsel or by Story in which this rule has been applied the objection was taken by exception to the answer or upon bill and answer before a replication was filed and it was generally treated as a matter of form, and opportunity was given to amend and to interpose new denials. No case has been cited in which, after replication, a general denial or a negative pregnant has been held to constitute an admission of the indispensable averments of the bill at which it was leveled. The reason for the rule that denials must be full and explicit, and that general denials and negatives pregnant are insufficient, is that the complainant may know before he files his replication and joins issue what averments are admitted and what he must prove. If he is of the opinion that a general denial or a negative pregnant sufficiently informs him he may waive more specific denials. Equity Rule No. 61 reads:

"After an answer is filed on any rule day, the plaintiff shall be allowed until the next succeeding rule day to file in the clerk's office exceptions thereto for insufficiency, and no longer, unless a longer time shall be allowed for the purpose upon cause shown to the court, or a judge thereof; and, if no exception shall be filed thereto within that period, the answer shall be deemed and taken to be sufficient."

It is conceded that, if exceptions had been filed to the form of this denial, it would have been insufficient, but the defendants would have been given an opportunity to amend their answer and to interpose

denials or admissions that would have been sufficient. The election of the complainant to file no exceptions undoubtedly led the defendants to believe that the form in which their averments and denials were presented was admitted to be sufficient, and hence it estopped the complainant from denying its sufficiency. The form of its denial was not of the substance or essence of the answer, and the objection to its sufficiency because it was not more specific was waived by the failure to except to it. It must now "be deemed and taken to be sufficient." A general replication admits the sufficiency of the answer as a discovery, and is a waiver of any objection to the form in which its defenses are presented. I Beach's Modern Equity Practice, § 474; Story's Equity Pleadings (10th Ed.) § 877; McGorray v. O'Connor, 31 C. C. A. 114, 116, 87 Fed. 586, 588.

A general denial or a negative pregnant in an answer in equity, while it is insufficient on exceptions, cannot be deemed an admission of the averments of the bill thus denied after replication, and no relief can be granted upon those averments in the absence of proof. Savage v. Benham, 17 Ala. 119, 132; White v. Wiggins, 32 Ala. 424; Russey v. Walker, 32 Ala. 532, 534; Parkman v. Welch, 19 Pick. (Mass.) 231, 234; United States v. Ferguson (C. C.) 54 Fed. 28; Robinson v. American Car & Foundry Co. (C. C.) 132 Fed. 166; Patton v. J. M. Brunswick & Balk Co., 23 Fla. 283, 2 South. 366, 367. There are so many averments of the bill in this case which are essential to its equity, including among others the allegations relating to the legitimate and lucrative character and to the extent of the business of the complainant, and to the existence, the nature and the extent of the injury, present and prospective, which an enforcement of the fraud order had inflicted and would be likely to inflict upon it, that were not admitted by the general denial in the answer but were in form denied that its equity was not established and no decree for the complainant could therefore have been lawfully granted upon these pleadings in the absence of proof.

For this reason, the decree of dismissal of the bill must be affirmed. It is so ordered.

ADAMS, Circuit Judge, and PHILIPS, District Judge (concurring). We agree with the result reached in the foregoing opinion, but are unable to give our assent to the general classification of cases in which the action of the Postmaster General may be reviewed by the courts. It is said, in effect, that his action is reviewable when it is "palpably wrong," or when, through "gross mistake of fact, he fell into a misapprehension of the facts" resulting in a palpably wrong order. The words "palpably wrong" and "gross mistake of facts" are very comprehensive and elastic, and may be interpreted to mean what we would be unwilling to say would justify injunctive relief in an individual case. Moreover, we doubt whether the rules, as broadly stated, are warranted by the decisions of the Supreme Court, including the case of National Life Ins. Co. of N. A. v. National Life Ins. Co., 28 Sup. Ct. 541, 52 L. Ed. ——, decided by the Supreme Court on April 6, 1908, taken as a whole, and, believing that the recognition of them as law might afford ground for a contest over any fraud

order issued, and thereby seriously embarrass the administration of the affairs of a great department of the government, we prefer to express no opinion upon them until a case arises demanding it.