.ATCHISON, T. & S. F. RY. CO. v. SULLIVAN, County Treasurer, et al.

(Circuit Court of Appeals, Eighth Circuit. September 23, 1909.)

1. Taxation (§ 608*)—Systematic Omission or Undervaluation—Suit to Enjoin Illegal Tax Based Thereon.

A systematic, intentional, continuing omission or undervaluation of other taxable property, in violation of the Constitution or statute, by the taxing officers of a state or county, pursuant to a rule or practice adopted by them, the inevitable effect of which is an unjust discrimination in taxation against the property of complainant, and against other property similarly situated, will sustain a bill in equity in a national court to enjoin the collection of the tax based on the illegal discrimination.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1234; Dec. Dig. § 608.*]

2. Taxation (§ 608*)—Illegal Tax—"Adequate Remedy at Law"—Action at Law Not as Adequate as Suit in Equity.

The adequate remedy at law, which will deprive a court of equity of jurisdiction, must be as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity.

And in a case of this nature the payment of the illegal portion of the tax and the prosecution of an action at law to recover it back is neither as prompt, certain, complete, nor efficient a remedy as a suit for an injunction against its collection.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1238; Dec. Dig. § 608.*

For other definitions, see Words and Phrases, vol. 1, pp. 182–183.]

3. Taxation (§ 608*)—Actual Intent to Discriminate Not Essential—Law Presumes It from Effect of Acts.

The law presumes that every man intends the natural and inevitable effect of his deeds, and that taxing officers who intentionally omit or undervalue other taxable property in violation of the Constitution or the statute, so that an undue share of the burden of taxation is necessarily

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thrown upon the property of complainant, intended to discriminate against its property. It is not necessary to its cause of action that the officers should have had any such actual intention, for their acts were as injurious and as remediable without as with that intention.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1234; Dec. Dig. § 608.*]

4. Taxation (§ 611*)—Estoppel—Admission That Assessment is Erroneous Estops from Invoking Contrary Presumption.

Parties to a suit who admit in their pleadings that the actual value of property was far in excess of its assessed value are estopped from invoking, to sustain the assessment, the rule that where the determination of an issue of fact, like the valuation of property for taxation, is intrusted by statute to the judgment of an officer or a board, his or its decision raises more than a presumption of fact, and may not be overthrown by the testimony of two or three witnesses.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1252; Dec. Dig. § 611.*]

5. Evidence (§ 215*)—Report for Taxation Competent Evidence Against Maker in Suit to Enjoin Tax—Report to Interstate Commerce Commission for Other Purposes Incompetent.

A report made by a railway company to taxing officers in pursuance of the requirement of a state statute, for the purpose of aiding the officers in properly assessing its property, is competent evidence against it of the facts stated therein, in a suit by it to enjoin the collection of taxes levied upon an assessment based upon the report.

But a report of the company to the Interstate Commerce Commission, covering a period of time other than that on which the statute required the assessment to be based, and not made for taxation, is not competent evidence against it in such a suit.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 754–759; Dec. Dig. § 215.*]

6. Evidence (§§ 241, 246*) — Admissions of Agents and Attorneys in One Suit Not Competent Evidence Against Principals in Another Involving Different Issues.

The admissions of agents and attorneys authorized to act in a suit or legal proceeding estop their principals therein; but they are not competent evidence against the latter in another suit or legal proceeding in which different issues are involved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 887, 945, 946; Dec. Dig. §§ 241, 246.*]

7. Taxation (§ 390*)—Market Value of Bonds and Stock, and Gross Earnings and Net Earnings, More Persuasive Evidence of Value of Railroad Property Than Cost of Production of Tangible Property.

Where the basis of assessing the property of a railroad company in a state for taxation prescribed by statute and followed is to ascertain the value of its corporate plant used or convenient for operating its railroad, wherever situated, excluding its property not necessary or convenient for that purpose which is otherwise assessed, and then to take such a portion of that value as the number of miles of its main track in the state bears to the number of miles of its entire main track, the current cash value of all the obligations which constitute its funded debt, and of all its outstanding shares of stock, are competent evidence of the value of its corporate plant, and, in connection with its entire mileage and its mileage in the state, more persuasive evidence of the value of that part of its corporate plant in the state, than the cost of reproduction of its tangible property therein.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 653; Dec. Dig. § 390.*]

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

8. TAXATION (§ 390*)—PRESUMPTION IS THAT ALL PROPERTY OF RAILROAD COMPANY IS HELD FOR RAILROAD USE, AND THAT VALUE IS DISTRIBUTED THROUGHOUT MILEAGE—EVIDENCE TO CONTRARY COMPETENT.

Evidence of the value of property not necessary for railroad purposes, and that parts of the corporate plant of a railroad company, including its various terminals, are of exceptional value, is competent, and, when offered, must be given effect by the assessing board and by the court in ascertaining the value of its corporate plant in the state.

But in the absence of such evidence the presumption is that all its property is part of its corporate plant, and that its tangible and intangible property are equally distributed throughout its mileage.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 653; Dec. Dig. § 390.*]

9. TAXATION (§ 390*)—VALUATION OF RAILROAD—INTANGIBLE PROPERTY COMBINED WITH AND DISTRIBUTED TO EVERY PART OF TANGIBLE PLANT.

The intangible property of an operating railroad company, its franchises, contracts, privileges, and good will, are presumptively combined unavoidably and inextricably with, automatically distributed to, and they enhance the value of, every part of its tangible corporate plant.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 653; Dec. Dig. § 390.*]

10. TAXATION (§ 608*)—RESULTING LEGAL INJURY ESSENTIAL TO RELIEF FROM UNDERASSESSMENT.

Where the property of the complainant and of others whose property is subject to a like levy for taxation is illegally underassessed to substantially the same extent, the complainant is entitled to no relief. Resulting legal injury, continuing or threatening, is as essential to relief in equity as causal wrong.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1233, 1234; Dec. Dig. § 608.*]

11. TAXATION (§ 100*)—LIVE STOCK—CONSTRUCTION OF SECTION 3927t, COLORADO STATUTES.

Under section 3927t, Mills' Ann. St. Rev. Supp. Colo:, live stock brought into a county between September 1st and December 31st of one year, and shipped out between January 1st and April 1st of the succeeding year, is taxable in that county for the latter year.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 201; Dec. Dig. § 100.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

Bill by the Atchison, Topeka & Santa Fé Railway Company against John R. Sullivan, Treasurer of Bent County, Colo., and others. From a decree dismissing the bill, complainant appeals. Reversed.

Henry T. Rogers and Gardiner Lathrop (Daniel B. Ellis, Lewis B. Johnson, Pierpont Fuller, and George A. H. Fraser, on the brief), for appellant.

Jesse G. Northcutt and Allen M. Lambright (A. Watson McHendrie, on the brief), for appellees.

Before SANBORN, Circuit Judge, and CARLAND and POLLOCK, District Judges.

SANBORN, Circuit Judge. This is an appeal from a decree which dismissed a bill in equity, exhibited to prevent the treasurer of Bent

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

county, in the state of Colorado, from collecting of the complainant taxes which it alleged were illegal and excessive. The Constitution of that state required taxes to be uniform upon the same class of subjects (article 10, § 3), and the statutes required all taxable property to be assessed at its full cash value. The State Board of Equalization was required to assess the railroad property of each railroad company in the state as a unit and to apportion the assessment to the counties of the state on a mileage basis, the assessor of each county was required to assess other taxable property in his county, and these two assessments were placed upon the tax lists and subjected to the same levies. Mills' Ann. St. Rev. Supp. §§ 3764, 3895, 3918, 3920.

The gravamen of the bill was (1) that while the complainant's property in Bent county in 1905 was not worth more than $25,000 per mile and the State Board assessed it $14,800 per mile, or 55 per cent. of its value, the assessor of Bent county assessed other taxable property in that county at not more than 25 per cent. of its actual value; that this assessor omitted from his assessment all credits, all watches, clocks, and jewelry, and much other property taxable in that county, with the knowledge and consent of the other county officials; that he did so pursuant to a rule adopted by the county officers, and did so systematically and intentionally, in order to make the complainant pay a larger tax in proportion to the value of its property than others who had taxable property in that county would pay; and (2) that the State Board transmitted to the county an assessed value of $14,800 per mile of complainant's railroad, when the proportion of the assessed value of its property in the state which the board was required by the statutes to certify to that county was $14,385.28 per mile.

The treasurer of the county admitted by his answer that the assessed value certified to the county by the State Board was excessive to the amount of $414.72 per mile, as averred in the second complaint recited above, and the effect of this admission was that the complainant's tax was excessive on this account to the amount of $676.78. The treasurer denied that the assessor of Bent county knowingly or willfully omitted to assess credits, watches, jewelry, and other property; but he did not deny, and hence he admitted, that the assessor did omit to assess them. He denied that the assessor assessed the property in his county "so low as 25 per cent. of its actual cash value," and hence he admitted that the assessor did assess it as low as 26 per cent. of its actual value. He denied that the assessor made the omissions and the low assessment in collusion with the county commissioners, or systematically, or with intent to impose an undue burden of taxation upon the complainant, and he averred that the county officers discharged their duties in good faith to the best of their judgment and ability. He admitted that the State Board assessed the complainant's property in Bent county at $14,800 per mile, but denied that it was assessed any higher in proportion to its actual value than other property in Bent county was.

The complainant introduced evidence which tended to prove systematic omissions and undervaluations by the assessor, and to avoid the effect of that evidence the treasurer invoked the rule that where

the determination of an issue of fact, or of mixed law and fact, like that relative to the valuation of property for taxation, is intrusted by law to the judgment of an officer or board, his or its decision raises something more than the mere presumption of fact, and it may not be overthrown without more than the testimony of two or three witnesses to the contrary. Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus, 154 U. S. 421, 435, 436, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Adams Express Company v. Ohio State Auditor, 165 U. S. 194, 229, 17 Sup. Ct. 305, 41 L. Ed. 683. The treasurer introduced evidence which tended to show that the actual value of complainant's property in Bent county was more than $25,000 per mile, and to avoid the effect of that evidence the complainant invoked the same rule; but each party was estopped by his pleading from availing himself of the benefit of this rule in the case in hand. The treasurer could not rely upon it to sustain the assessment of the county assessor, because he had admitted in his pleading that his assessment was only 26 per cent. of the actual value of the property. The complainant could not invoke it successfully to sustain the assessment of its property in Bent county at only $14,800 per mile by the board, because it had admitted in its complaint that the actual value of its property was $25,000 per mile. The rule is inapplicable to this case, and its consideration is here dismissed.

Counsel for the complainant argue that the treasurer admitted by his answer that the board assessed its property at its actual cash value; but a careful analysis of the answer has convinced that the fair and true construction of it is that the treasurer admitted that the board assessed that property $14,800 per mile, but averred that it was worth more than $25,000 per mile, and that it was not assessed higher in proportion to its actual value than was the other taxable property in the county.

The statutes required the board to assess the railroad property, and they required the assessor to assess the other taxable property in the county, at its actual value. They were required to assess the property within their respective jurisdictions independently, without conference or consultation with each other, at times when they could not know that either had made or would make an assessment on any other than the lawful basis, the basis of the actual value of the property. The only safeguard against injustice, the only surety for impartiality and uniformity, at this point in the taxing proceedings, was assessments at the actual value of the property. For, if either the board or the assessor varied from this standard, the assessments could seldom fail to be partial and unjust. In the absence of all evidence, the pleadings alone establish the facts that the assessor disregarded this law and assessed the taxable property subject to his jurisdiction at 26 per cent. of its actual value, and that the board disregarded the law and assessed the property within its jurisdiction at less than 60 per cent. of its actual value. In this state of the law and of the pleadings, the assessments, though competent, were not even persuasive, evidence of the actual value of any of the property, nor of uniformity of assessment, and these issues were open to proof by the preponderance of other evidence.

The evidence relative to these matters is voluminous, and a digest or review of it here would be useless. Suffice it to say that it satisfactorily establishes these facts: The assessor of Bent county omitted to assess watches, clocks, jewelry, credits, and more than 100,000 sheep taxable in his county. He assessed the taxable property which he did list at between 25 per cent. and 33⅓ per cent. of its actual value. The evidence does not disclose more accurately the exact per cent. which his assessment was of the real value of the property he assessed. The county commissioners of the county of Bent knew that he had made his assessment at about 33⅓ per cent. of the actual value of the property he listed, and that he had omitted some of the taxable property, and they silently acquiesced in this course. It was, and had been for many years, the rule and the settled policy and practice of these local taxing officers to violate the law and assess the taxable property in that county within their jurisdiction at about one-third of its actual value. The assessor actually intended to assess the property he listed upon that basis. He testified, however, and the truth of this statement must be conceded, that he did not have any actual intent or purpose to impose an undue burden upon the complainant or upon railroad property. His acts, nevertheless, were in violation of the statute, their natural and inevitable effect was to diminish the burden of taxation upon the property within his jurisdiction and to increase it upon the railroad property, and, however innocent in actual intent he may have been, his acts were as injurious to the owners of railroad property as if he had actually intended to discriminate against them, and the law conclusively presumes that he intended the natural and inevitable effect of his deeds. It was not necessary to the complainant's cause of action that the assessor or the county commissioners should have had any actual intention to increase unduly the complainant's share of the burden of taxation. It was sufficient to sustain its cause that they intended to disregard the law, and that the natural and inevitable effect of that violation was the increase of its share of the burden. Taylor v. Louisville & N. R. Co., 31 C. C. A. 537, 559, 88 Fed. 350, 372.

These facts leave no doubt that the taxing officers of Bent county adopted a rule pursuant to which they systematically and intentionally grossly underassessed the property of that county within their jurisdiction, with the legal intent unlawfully to diminish the burden of taxation upon property in that county other than railroad property, and to increase the burden of taxation upon railroad property; and if this were the whole case the complainant would be entitled to relief from the unlawful portion of this burden. A systematic and intentional under or over assessment of one or more classes of property in violation of the law, whereby one or more classes of property is to be made to bear an undue proportion of the burden of taxation, presents a good cause of action for relief from the payment of the unjust part of the proposed tax. Taylor v. Louisville & N. R. Co., 88 Fed. 350, 372, 31 C. C. A. 537, 559; Cummings v. National Bank, 101 U. S. 153, 158, 25 L. Ed. 903; Raymond v. Chicago Traction Co., 207 U. S. 20, 37, 38, 28 Sup. Ct. 7, 52 L. Ed. 78; Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Backus, 154 U. S. 421, 423, 435, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

But the treasurer alleged, and the court below found, that while the property in Bent county other than the railroad property was grossly undervalued; the property of the railroad company was also underassessed in substantially the same proportion; so that the complainant suffered no real injury by the former undervaluation. This finding is assailed by counsel for the railway company on the grounds: (a) That the defendant admitted in his answer that the $14,800 per mile at which the board assessed its property was its actual value; (b) that the legal presumption that the board's assessment was according to law establishes the fact that $14,800 per mile was its actual value; and (c) that there was no competent and no sufficient evidence that its value was more than this amount. The first two grounds have been considered and held untenable—the first because the true construction of the answer does not disclose the admission claimed, and the second because the admission in the bill that the complainant's property was worth $25,000, when the board assessed it at $14,800, estopped the complainant from asserting that the board assessed its property at its actual value, and opened the issue of that value to proof by any competent evidence.

Was there any competent evidence that the value of this property was more than $25,000 per mile? The statutes of Colorado required the Board of Equalization to assess the property in that state of a railroad company held for railroad purposes, excluding its property not necessary or convenient for those purposes which was otherwise assessed, on the basis of the unit of use, to determine the true value of its corporate plant or profit-producing unit, whether a part or all of it was situated in that state, to ascertain the total number of miles of its railroad track wherever situated, the total number of miles in the state and in each county in the state, and then, after giving due consideration to the relative values of different portions of the corporate plant and of the franchises appurtenant thereto, and all other competent evidence and just considerations relative to the value of the plant and its various parts, to ascertain the value of the part of the corporate plant in Colorado, and in each county in that state, in the light of all these considerations and all this evidence, upon the theory that, in the absence of countervailing considerations or evidence, the value of that part of the company's profit-producing unit in the state would be that proportion of the value of its entire corporate plant which the number of miles of its railroad in the state bore to its entire mileage, and that the value of that part of its railroad property in each county would be that proportion of the value of its corporate plant in the state that its number of miles in the county bore to its number of miles in the state. Sections 3918 and 3920. This method of assessment has been repeatedly sustained by the Supreme Court. Pittsburg, C., C. & St. L. R. R. Co. v. Backus, 154 U. S. 421, 428, 429, 430, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Adams Exp. Co. v. Ohio State Auditor, 166 U. S. 185, 220, 221, 222, 224, 17 Sup. Ct. 604, 41 L. Ed. 965; Adams Exp. Co. v. Ohio State Auditor, 165 U. S. 194, 197, 221, 17 Sup. Ct. 305, 41 L. Ed. 683.

The statutes required as a basis for this assessment that each railway company owning, controlling, or operating any railroad in the state

should furnish the board and should file with its clerk a statement, verified by one of its general officers, showing for the year ending December 31st preceding—in this case, for the year ending December 31, 1904—among other things, (1) the whole number of miles of main track operated or controlled by the company, as well that without as within the state; (2) the whole number of miles of such track within the state; and (3) the amount of money and other cash items, the number of shares of the capital stock of the corporation outstanding and the average market value thereof during the year for which the statement is made, the total amount and market value of mortgage bonds or other incumbrance upon the property of such corporation and the rate of interest, and the gross earnings and the net earnings of the corporation during the year. Section 3907. The complainant made and filed such a statement with the board a short time before the assessment of this property was made, and this statement was introduced in evidence at the hearing below. It was competent evidence of the value of the property of the complainant, because it was the complainant's admission against interest, made pursuant to the requirement of the statute, for the purpose of enabling the taxing officers to ascertain the true value of its property.

We lay out of consideration here a report of the complainant to the Interstate Commerce Commission for the year ending June 30, 1905, which was introduced in evidence by the defendant, because there is no proof that the assistant to the president and the assistant general auditor, who appear to have made that report, were empowered by the railway company to make any statement or admission on its behalf in the matter of the taxation of its property, and the statements of agents and attorneys authorized to act and admit for their principals in one suit, litigation, or legal proceeding are not admissible against their principals in another such suit or proceeding, in which different issues are involved, without proof of their authority to act and admit in the latter suit or proceeding (Miller v. United States, 66 C. C. A. 399, 413, 133 Fed. 337, 351; Stone v. Bank of Commerce, 174 U. S. 412, 421, 19 Sup. Ct. 747, 43 L. Ed. 1028; Horseshoe Mining Company v. Miners' Ore Sampling Co., 77 C. C. A. 213, 214, 147 Fed. 517, 518; New York Life Ins. Co. v. Rankin, 162 Fed. 103, 108, 89 C. C. A. 103), and because this report does not cover the period of time upon which the valuation for taxation was required to be based, and it was not made for that purpose in pursuance of any statute or otherwise.

The report of the complainant to the State Board for the purpose of its taxation shows that the whole number of miles of railroad owned by it on July 1, 1904, was 8,119.04, and that the average funded debt upon these 8,119.04 miles was $29,175.92 per mile. There is undisputed testimony in the record before us to the effect that during the year 1904 the average market value of the preferred stock of the company was above its par value, and that the market value of its common stock was from $75 to $90 per share. The report shows that there were 1,020,000 shares of common stock and 1,141,195 shares of preferred stock outstanding. Reckoning the common stock at $75 per share, its market value was $76,500,000, and reckoning the value of the pre-

ferred stock at par, it was worth $114,199,530, and the total market value of the preferred and the common stock was $190,699,530, or $23,488 per mile, subject to the funded debt of $29,175.99 per mile. Upon this basis the value of the railroad was $52,663.92 per mile. The report of the complainant to the board also shows that its earnings for the year ending June 30, 1904, from operation, were sufficient to pay the expenses of operation, taxes, interest on its entire funded debt, and a dividend of 5 per cent. on its preferred stock and 4 per cent. on its common stock, and to leave a surplus of more than $1,000,000. To all this evidence counsel for the company urge many objections. They say that the valuation of the railroad upon this basis includes the value of three railroads other than that owned by the complainant. But the entire 8,119.04 miles were reported by the complainant to be owned by it, and they were operated by it and were a part of its profit-producing plant, which the state lawfully makes the basis of valuation, although there may have been other railroad companies than the complainant which were owned or controlled by it and were engaged in the operation.

They complain because the market value of the stock and bonds includes the value of the franchises of the company and of its right to conduct interstate commerce. The right to carry on interstate commerce is exercised by the company within as well as without the state of Colorado, and is appurtenant to each mile of its railroad wherever situated, and the tax levied upon the assessment made upon the mileage basis is not a tax upon interstate commerce; but it is a tax upon the property of the company in the state. Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 697, 698, 15 Sup. Ct. 268, 360, 39 L. Ed. 311; Adams Express Co. v. Ohio State Auditor, 165 U. S. 195, 220, 226, 17 Sup. Ct. 305, 41 L. Ed. 683. It is true that the current cash value of the whole funded debt and of the entire stock of a railroad company shows what, in the opinion of those who own and deal in its securities and who are perhaps best able to judge, the value of all the property of the company is, and that this value includes all the tangible and all the intangible property of the company, all its corporate franchises, all its privileges and contracts, and all its good will. State Railroad Tax Cases, 92 U. S. 575, 605, 23 L. Ed. 663; Pittsburg, Cincinnati, Chicago & St. Louis R. Co. v. Backus, 154 U. S. 421, 429, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Adams Express Company v. Ohio State Auditor, 166 U. S. 185, 221, 222, 17 Sup. Ct. 604, 41 L. Ed. 965. But all the tangible property convenient for railroad purposes, the roadbed, the rails, the ties, the station houses, is combined unavoidably and inextricably with the intangible property, with the franchises, privileges, and contracts of the corporation into a single corporate plant, a single profit-producing unit used for railroad purposes. This intangible property unavoidably and automatically distributes itself wherever the tangible property is, and it enhances the value of every part of it. There are 26 miles of the complainant's railroad in Bent county. There is uncontradicted evidence that this part of the railroad, excluding rolling stock and shop machinery, could be reproduced for from $20,000 to $21,000 per mile; but this part of

the complainant's railroad, separate from the system or from the operating unit of which it is a component portion, would be worth far less than it now is, because the franchise of the complainant to be, its franchise to do, its privilege to carry on, interstate commerce, all its franchises and privileges and its good will, are appurtenant to this portion of its railroad, are exercised to operate it, and become a part of its value. Adams Express Company v. Ohio State Auditor, 166 U. S. 185, 221, 222, 223, 224, 17 Sup. Ct. 604, 41 L. Ed. 965.

Counsel for the company insist that the current cash value of the stock and bonds is an erroneous and misleading fact from which to deduce the value of the company's railroad property in Colorado, because the portions of its railroad in some more populous states are of greater value per mile than the part of its railroad in Colorado. It is undoubtedly a fact that there must be this difference in value of the separate parts of the railroad. But this difference in value exists in the case of every other corporation which has been or is assessed upon the mileage basis according to the rule of the unit of use, and notwithstanding this fact that rule probably presents the best, and it certainly presents a lawful, method of ascertaining the value of such property for assessment, when the board or court which is finding the value gives due consideration and effect to considerations and evidence relative to the value of the entire corporate plant, relative to the value of that part of the company's property not included within the plant, which must be deducted from the value of its entire property, and to considerations and evidence relative to the value of different parts of the corporate plant and of the franchises appurtenant thereto; and in view of this fact the market value of the stock and bonds must be competent and persuasive evidence from which to ascertain the value of the railroad in the state of Colorado, or in any other state.

Counsel contend that the market value of the stock and bonds is a misleading fact from which to deduce the value of the railroad property in Colorado, because the complainant has other property than that used for railroad purposes, the value of which should be deducted from the market value of the stock and bonds, and because the company has more valuable terminals at Chicago, Kansas City, Galveston, Los Angeles, and San Francisco than it has in the state of Colorado; but there is no competent evidence in the record of the amount and value of the property which the complainant owned in the year 1904 that was not a part of the profit-producing unit, nor of the value of complainant's terminals outside of Colorado or within that state. The company was called upon in accordance with the statute to make a return of its corporate plant as a basis for the assessment of its property. It made that return, and it has been introduced in evidence in this case. The presumption is, in the absence of evidence to the contrary, that a railroad company holds all its property for railroad uses, and that the value of the stock and bonds stated in the return indicates the value of the complainant's property held for those purposes. If it had accumulated property that it was not using or holding for such purposes, or if its case was one of those exceptional cases wherein some parts of its railroad in other states were of extraordinary value,

173 F.—30

it would have been competent for it to have proved that fact at the
hearing below. In the absence of any such proof, the legal presump-
tion must prevail, and the market value of its stock and bonds, divided
by the number of the miles of its railroad, must be substantial evidence
of the value of its railroad per mile in the state of Colorado and in the
county of Bent. Adams Express Company v. Ohio State Auditor, 165
U. S. 194, 227, 17 Sup. Ct. 305, 41 L. Ed. 683; Adams Express Com-
pany v. Ohio State Auditor, 166 U. S. 185, 222, 223, 17 Sup. Ct. 604,
41 L. Ed. 965; Pittsburg, Cincinnati, Chicago & St. Louis R. Co. v.
Backus, 154 U. S. 421, 430, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

The result is that this record contains the evidence of two witnesses
that the cost of reproduction of that part of the complainant's railroad
in Colorado in 1904, exclusive of rolling stock and shop machinery,
would have been about $20,000 per mile on the one hand, and on the
other hand evidence of the gross earnings and of the net earnings of
the entire corporate plant of the company for the year ending June 30,
1904, and of the current cash value of the obligations evidencing the
funded debt, and of the stock of the company during that year, to the
effect that the value of the complainant's corporate plant or profit-
producing unit; and hence, under the statutory and legal rule for its
assessment for taxation on a mileage basis, the value of that part of its
plant in Colorado was about $52,663.92 per mile. The assessment made
by the board, $14,500 per mile, was 28 per cent. of this value. The
gross and net earnings and the current cash value of the obligations
which evidence the funded debt and of the stocks of a railroad compa-
ny are neither exclusive nor conclusive evidence of the value of its
railroad property, or of the part of its profit-producing unit in any
state. But they are competent and more persuasive evidence of such
value than the mere cost of reproducing the tangible property which
constitutes the railroad, or any part of it, because this cost of repro-
duction excludes the value of the intangible property of the company,
of its good will, its franchises, its privileges, and its contracts, which
is sometimes greater than the value of its tangible property (Adams
Express Company v. Ohio State Auditor, 165 U. S. 194, 220, 221,
223, 224, 17 Sup. Ct. 305, 41 L. Ed. 683), and because those who ac-
tually buy, sell, and own the stocks and bonds of a railroad company
are generally better qualified than strangers to form correct opinions of
the value of its property, and the current market value of all these se-
curities is very persuasive proof of their estimate of the value of the
property of the company (State Railroad Tax Cases, 92 U. S. 575,
605, 23 L. Ed. 663; Pittsburg, Cincinnati, Chicago & St. Louis Ry.
Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031).

When to these facts are added the presumptions that, in the absence
of countervailing evidence, all the property of a railroad company is
held by it for railroad uses, and that the value of one part of it may
be fairly estimated by taking that part of the value of its corporate
plant which is measured by the proportion of the length of the particu-
lar part to that of the whole railroad (Adams Express Company v.
Ohio State Auditor, 166 U. S. 185, 223, 17 Sup. Ct. 604, 41 L. Ed.
965; State Railroad Tax Cases, 92 U. S. 575, 611, 23 L. Ed. 663;

Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus, 154 U. S. 421, 430, 14 Sup. Ct. 1114, 38 L. Ed. 1031), and the fact that the gross and net earnings of the corporate plant for a considerable time preceding the date of the valuation were ample, after paying expenses of maintenance, operation, and reasonable betterments, to pay reasonable interest on the current cash value of all the outstanding stock and of all the bonds and other obligations of the company, this evidence becomes too persuasive to be overcome by testimony of the mere cost of reproducing the tangible structure, consisting of right of way, roadbed, ties, rails, station houses, and other improvements which form a part of the railroad.

The evidence is then convincing that the Board of Equalization assessed the property of the complainant in Bent county at about 28 per cent. of its cash value, and that the other taxable property in that county which was assessed at all was assessed at about the same per cent. of its value. It fails to sustain the claim of the complainant that its property was assessed at a higher proportion of its value than was the other property which was assessed in that county. The complainant, therefore, has suffered and can suffer no injustice, it has sustained and can sustain no injury, by the gross underassessment by the assessor of Bent county of the property within his jurisdiction, and it is entitled to no relief on that account. Courts of equity may not right wrongs at the suit of those who have not suffered from them. Resulting legal injury, continuing or threatening, is as essential to relief in equity as causal wrong. Darragh v. H. Wetter Mfg. Co., 23 C. C. A. 609, 619, 78 Fed. 7, 16; People's United States Bank v. Gilson, 88 C. C. A. 332, 338, 161 Fed. 286, 292.

After the assessments had been made, the complainant filed a petition for an equalization of them, and it complains, and the defendant denies, that the Board of Equalization unlawfully refused to give it a hearing and confirmed the assessments as they were originally made. As, however, these assessments were substantially uniform, and as the complainant can suffer no injustice or injury on account of the basis upon which they were made, this issue has become immaterial, and it is here dismissed.

There remain for consideration the omissions by the assessor of taxable property from his assessment. The evidence is conclusive that he omitted all watches, clocks, and jewelry, all credits, and all fat sheep and cattle, that the average bank deposits in that county during the year 1905 amounted to $230,000, and the weight of the evidence is that there were about 131,755 fat sheep in the county between January 1, 1905, and April 1, 1905, a small part of which remained in the county on and after the latter date. The general rule was that, except as otherwise provided, personal property should be assessed in the county where it was on the 1st day of April in each year. Section 3873. But it was provided by section 3927t: (a) That it should be lawful for the assessor to assess cattle, sheep, and horses as of any date between the 1st day of January and the 31st day of December of the year in which the assessment was made—in this case of the year 1905; (b) that when any live stock was driven into the county, for the purpose of grazing

therein, it should be liable to be assessed for all taxes leviable for the year in which it was driven into the county; (c) that any stock brought into the state between April 1st and September 1st in each year, and removed from the county to which it was brought before one year had elapsed, should be subject to taxation for the year in which it was brought into the state, but that stock brought in between those dates and kept in the county more than a year should be exempt from taxation for the year in which it was introduced into the state, and should be subject to taxation thereafter; and (d) that all stock brought into the state after September 1st and before December 31st of the same year should be exempt from taxation for that year. The omitted sheep, with perhaps a few exceptions, were brought into the county between the 1st of September and the 31st of December of the year 1904. This assessment was for the year 1905.

Clauses "b," "c," and "d," above, so far as they concern the assessment of these sheep, relate exclusively to their assessment for the year 1904, the year in which they were introduced into the county, and they have no relevancy to their assessment in 1905, except that they clearly show that it was the purpose and policy of the state to assess live stock brought into a county to be fed when it was removed therefrom within a year thereafter, although it did not happen to be in the county on the 1st day of April in any year. Thus under (a) live stock driven into the county for grazing is presumably introduced after April 1st, but it is taxable for that year nevertheless. Under (b) stock brought in after April 1st and before September 1st and shipped out before the succeeding April is taxable for the year of its introduction. But under (d) stock brought in after September 1st is not taxable for that year. This stock, therefore, was not taxable for the year 1904. Unless it was assessed for the year 1905, it would escape taxation in that county altogether. The statute expressly empowered the assessor to assess these sheep as of any date between January 1 and April 1, 1905, and in view of the policy of the state exhibited by these statutes to assess all live stock brought into a county, whether it was there on April 1st or not, the grant of this power must be deemed to have imposed upon the assessor a corresponding duty to make the assessment. The Constitution of the state required this property to be assessed, and it required taxes to be levied, under general laws (article 10, § 3), and the Legislature never intended that the assessment and taxation of this property should be left discretionary with the assessor. The statute required him to assess these sheep.

The evidence is conclusive that he so understood his duty, but that he and the other county officers intentionally omitted this property from the assessment pursuant to a rule and practice of the assessors and county commissioners of that county which had long prevailed to assess and tax no fat stock therein, because they wished to encourage the industry of feeding this stock in their county in order to provide a market for hay and to make general business prosperous in their community. The injustice of this rule and practice to the railroad company is demonstrated by the fact that the whole number of fat sheep in the county in the spring of 1905 was about 131,755, and their value at

the rate applied by the assessor to other property for the purposes of assessment would have been about $223,983.50, while the whole number of sheep he actually assessed was only 25,515, at a valuation of $43,416, and if these fat sheep had been assessed at the valuation above stated the complainant's tax would have been reduced about $3,000.

Counsel for the defendant argue that the complainant is estopped from claiming any reduction of its tax on account of the omission of these sheep, because at some prior time the county attorney had a conversation with the vice president of the railway company, and he testified, "Just what was said I don't remember, but we came away with the impression that it would be very satisfactory to his department to omit them from taxation in order to encourage the industry," and because the number and the value of the taxable sheep omitted were much less than those stated. The alleged estoppel was not established, because there was no proof that the vice president of the company had any authority from it to consent that the assessor should disregard the law, and the testimony was too indefinite to satisfy that he ever gave any such consent.

The testimony does not prove the number and value of the taxable sheep omitted beyond a reasonable doubt; but it establishes their number and their value by a fair preponderance of the evidence. Moreover, there is conclusive evidence that there were deposits in the banks to the amount of $230,000, there is evidence that not more than half of the credits thus evidenced could probably have been offset by debts of the depositors, there must have been other credits besides bank deposits, and there must have been watches and clocks that were taxable in this county. In view of all these facts, and of the admitted fact that the complainant is entitled to a reduction from its tax of $676.78 on account of the excessive assessment certified to the county by the Board of Equalization, it is certain that no injustice will be done to the county by a reduction of the tax of the complainant in the sum of $3,580, and that in justice and in equity the complainant is entitled to a reduction of at least that amount.

Finally, counsel for the defendant invoke the conceded rule that some recognized ground of equity jurisdiction, and the fact that the complainant has no adequate remedy at law, in addition to the fact that the tax is excessive and illegal, are essential to the maintenance of a suit in equity for injunctive relief, and they insist that no such foundation for this suit has been laid by the proof. Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; Union Pacific Railway Co. v. Cheyenne, 113 U. S. 516, 5 Sup. Ct. 601, 28 L. Ed. 1098; Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; State Railroad Tax Cases, 92 U. S. 575, 613, 614, 23 L. Ed. 663; Allen v. Pullman's Palace Car Co., 139 U. S. 658, 661, 11 Sup. Ct. 682, 35 L. Ed. 303; Pacific Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; Ogden City v. Armstrong, 168 U. S. 224, 236, 18 Sup. Ct. 98, 42 L. Ed. 444; Albuquerque Bank v. Perea, 147 U. S. 87, 13 Sup. Ct. 194, 37 L. Ed. 91; Coulter v. Louisville & Nashville Ry. Co., 196 U. S.

599, 609, 25 Sup. Ct. 342, 49 L. Ed. 615; Taylor v. Louisville & N. R. Co., 88 Fed. 350, 356, 31 C. C. A. 537. Fraud and mistake are ancient heads of equity jurisdiction. The Board of Equalization made a plain mistake, demonstrable by the mere division of their assessment of the corporate plant of the company in the state by the number of miles of. railroad they found the company controlled therein, when it certified to the county of Bent its overassessment of the company's property in that county. The. systematic and intentional omission of watches, clocks, and jewelry, credits, and fat stock by the county assessor from the assessment of the property within his jurisdiction, however innocent in actual intention, was either an intentional fraud upon the complainant or such a gross mistake that it was a fraud in law.

Counsel cite the statute of Colorado, which provides that the board of county commissioners shall refund all taxes paid by any person which are afterwards found to be erroneous or illegal (Laws Colo. 1902 [Ex. Sess.] p. 146, c. 3, § 202), and contend that the complainant has an adequate remedy by an action at law based upon this statute. Conceding, without deciding, that it might maintain such an action to recover back the illegal portion of the tax against its property, is that remedy as adequate as the injunction of the court below? The adequate remedy at law which will deprive a court of equity of jurisdiction is a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in. equity. Williams v. Neely, 134 Fed. 1, 10, 67 C. C. A. 171, 180, 69 L. R. A. 232; Boyce v. Grundy, 3 Pet. 210, 215, 217, 7 L. Ed. 655; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 265, 26 C. C. A. 389, 393; Brown v. Arnold, 131 Fed. 723, 67 C. C. A. 125. The facts and the law of this case have been ably presented to and carefully considered by two courts, and all the material issues in it have been determined. The complainant now has and it is entitled to keep the $3,580 requisite to pay the illegal portion of its tax. An injunction in this suit will enable it to retain it, and will end this controversy here. In order to obtain any adequate relief at law, it must pay over this $3,580 to the defendant, must bring, try, and prosecute to judgment an action at law against the county to recover it back, must possibly, it may be probably, come again to this court for review of that trial, and then possibly, perhaps probably, prosecute a petition for a mandamus to compel the levy of taxes to pay the judgment it shall recover, and after all this it will never secure more than a part of the actual expenses it will necessarily incur in prosecuting its action at law. This proposed remedy is neither as prompt, nor as certain, nor as complete, as the relief which may be granted through this suit in equity.

Not only this, but the omission of the fat stock and the credits had been repeated by the officials of this county year after year. It was their habitual practice to omit them, and this practice threatened to· continue. It had grown into a rule, and yet it was a violation of the Constitution of the state, which requires that "all taxes * * * shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property real and personal " (article 10, § 3), and of the statute, which

required all personal property not exempt to be assessed. It was systematic, intentional, and continuing, and where there is a systematic, intentional, continuing omission or undervaluation of other taxable property by the taxing officers of a state or county, in violation of the Constitution or law, which inevitably effects an unjust discrimination in taxation against the property of the complainant and against other property similarly situated, a bill in equity will lie to enjoin the collection of that portion of the tax which resulted from the illegal discrimination. Cummings v. National Bank, 101 U. S. 153, 158, 25 L. Ed. 903; Raymond v. Chicago Traction Company, 207 U. S. 20, 36, 37, 28 Sup. Ct. 7, 52 L. Ed. 78; Railroad and Telephone Companies v. State Board of Equalizers (C. C.) 85 Fed. 302, 307, 318; Fargo v. Hart, 193 U. S. 490, 503, 24 Sup. Ct. 498, 48 L. Ed. 761; Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 391, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Nashville, C. & St. L. Ry. v. Taylor (C. C.) 86 Fed. 168, 184; Louisville Trust Co. v. Stone, 107 Fed. 305, 46 C. C. A. 299.

The facts of this case bring it under this rule, and the decree below must be reversed. The complainant may recover one-half of its costs in this court. The case must be remanded to the court below, with instructions to cause the costs of the parties in that court to be taxed and equally divided between the complainant and the defendants, and to enter a decree to the effect that, upon condition that the complainant pay within 60 days after the entry of the decree all the taxes in controversy and the interest thereon, except $3,580 and the interest thereon, or such part of said taxes, less said $3,580, and interest, as shall remain due from it after crediting to it the balance, if any, due to it on account of the costs which are to be taxed, the defendants be perpetually enjoined from collecting the said sum of $3,580 and interest, or any part thereof, on account of the tax in controversy or the proceedings thereunder; and it is so ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes