RITTERBUSCH, County Treasurer, et al. v. ATCHISON, T. & S. F. RY. CO.†

ATCHISON, T. & S. F. RY. CO. v. RITTERBUSCH, County Treasurer, et al.

(Circuit Court of Appeals. Eighth Circuit. July 15, 1912.)

Nos. 3,703, 3,704.

*(Syllabus by the Court.)*

**1. TAXATION (§ 611\*)—UNLAWFUL TAX—SUIT TO ENJOIN—TAXES JUSTLY DUE —AVERMENT OF PAYMENT OR TENDER.**

An averment of payment· or tender of the amount justly due is indispensable to the sufficiency of a bill to enjoin the collection of unjust taxes.

But where the allegations of the bill show that all the taxes assailed are void and inequitable, or that the void and inequitable part is so inextricably mingled with the part justly due that the two cannot be approximately separated, no such averment is necessary.

Averments upon this subject in a bill that the scheme of taxation is such that the complainant and other public service corporations are deprived of notice of and opportunity to be heard upon, and of appeals from, the assessment of their property, and of an equalization of the assessments of their property with those of others, while other taxpayers enjoy these advantages, that the taxing officers have assessed their property at its full value and that of other taxpayers at 63½ per cent. of its value, that the levy of taxes for 12 out of 19½ months is without authority, and the taxes for this period are so mingled with those of the other 7½ months that they cannot be separated, that the complainant has paid under protest more than half the taxes for the 19½ months, and is willing to give bond to secure, and that this amount so paid shall stand as security for, the payment of any taxes justly due, are ample to sustain the bill for an injunction.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.\*]

**2. EQUITY (§ 340\*)—ADMISSIONS—HEARING ON BILL—ANSWER AND REPLICATION.**

Where a case is set down for hearing on bill, answer, and replication, ·only those averments of the answer which are responsive to the bill are taken as true. All allegations in avoidance or justification are denied by the replication and are taken as untrue.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§· 697–701; Dec. Dig. § 340.\*]

**3. TAXATION (§ 446½\*)—OKLAHOMA STATE TAXES — STATUTES — TERRITORIAL LAWS—AUTHORITY TO LEVY.**

The board of equalization of the state of Oklahoma was without authority on October 1, 1908, to fix the rate of taxation or to levy taxes for the expenses of the state for the year ending June 30, 1909.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 788; Dec. Dig. § 446½.\*]

**4. DEPOSITIONS (§ 110\*)—OBJECTIONS.**

Objections to the introduction of an entire deposition are untenable, if any part of it is admissible in evidence.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 323–328½; Dec. Dig. 110.\*]

**5. TAXATION (§ 840\*)—PENALTY—DELINQUENT TAXES—INTEREST—DEMAND.**

One who would enforce a penalty for a failure to pay a claim, such as 18 per cent. per annum interest on delinquent taxes, must demand

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 22, 1912.

the true amount of the claim. No penalty is incurred by a demand of a larger amount.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1656; Dec. Dig. § 840.*]

6. TAXATION (§ 611*)—PARTIAL INVALIDITY—INJUNCTION—TERMS.

Subject to the established principles and rules of equity jurisprudence, the terms on which a court of equity will grant its relief, such as the rate of interest on taxes justly owing to be paid by a complainant as a condition of an injunction against the collection of those that are void, is discretionary with the chancellor.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245-1257; Dec. Dig. § 611.*]

*(Additional Syllabus by Editorial Staff.)*

7. EVIDENCE (§ 28*)—JUDICIAL NOTICE—FEDERAL COURTS.

The courts of the United States take judicial notice of the Constitutions and laws of the states.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 36, 43; Dec. Dig. § 28.*]

Appeals from the Circuit Court of the United States for the Western District of Oklahoma.

Suit by the Atchison, Topeka & Santa Fé Railway Company against F. W. Ritterbusch, as County Treasurer of Logan County, Okl., and others. From a decree enjoining the collection of state taxes, both parties prosecute cross-appeals. Appeal by the railway company dismissed, with costs, and judgment affirmed.

Charles West, Atty. Gen. (C. J. Davenport, on the briefs), for Ritterbusch and others.

S. T. Bledsoe (J. R. Cottingham, on the brief), for Atchison, T. & S. F. Ry. Co.

Before SANBORN, HOOK, and SMITH, Circuit Judges.

SANBORN, Circuit Judge. The county treasurer and sheriff of Logan county, Okl., appeal from a decree which enjoins them from collecting the state taxes upon the property of the Atchison, Topeka & Santa Fé Railway Company in that county for the year ending June 30, 1909, which were fixed and levied by the state board of equalization on October 1, 1908. The railway company appeals from the same decree.

The railway company brought suit against the county treasurer and sheriff, who will hereafter be called the defendants, to enjoin the collection of the taxes on its property for the 19½ months between November 16, 1907, the date when Oklahoma became a state, and June 30, 1909, for school districts, townships, cities, counties, and the state, and after the railway company had paid more than one-half the taxes a temporary injunction was granted against the collection of the remainder of these taxes. Before the final decree was rendered, which is challenged by this appeal, a compromise and settlement of the controversy over all these taxes, except those levied for state purposes, was made, and upon the payment by the railway company of the agreed amount a perpetual injunction against the col-

lection of any of these taxes for the year 1908 was decreed. The case then proceeded to final hearing and decree on the merits of the issue whether or not the state taxes for the 19½ months were lawfully made and ought to be paid. The court below held that the levy was lawful for the period between November 16, 1907, and June 30, 1908, but unauthorized and void for the fiscal year ending June 30, 1909. The railway company paid the taxes for the former period, and the perpetual injunction was then granted against the collection of any more taxes for state purposes for the 19½ months. We turn to the consideration of the alleged errors assigned by the defendants.

[1] They first contend that the court erred in overruling the demurrer to the original bill and issuing the preliminary injunction, because the bill contained no averment that the railway company had paid that part of the taxes which it conceded to be due, or that part which could be seen to be due on the face of the bill, or could be shown by affidavits to be due, before the preliminary injunction was granted (State Railroad Tax Cases, 92 U. S. 575, 616, 23 L. Ed. 663), but the bill contained an allegation that the entire sum the defendants sought to collect was $57,878.48, and that for the sole purpose of preventing the issue of a warrant and the seizure of its property the railway company had paid $29,715.73 of this amount under a written protest and with a notice that it would bring this suit to recover it. And where a complainant claims and shows by the averments in his bill that the entire tax is void, or that a substantial part of it is inequitable, and it is impossible to determine what portion, if any, is valid, no tender or payment of any part of the taxes, and hence no averment of any such tender, is essential to sustain a bill to enjoin their collection. Fargo v. Hart, 193 U. S. 490, 502, 24 Sup. Ct. 498, 48 L. Ed. 761.

There were averments in this bill to the effect that the taxes for 12 of the 19½ months were levied without any legislative authority, that they were so commingled with those for the other 7½ months that it was impossible to separate them, that the scheme of taxation adopted by the state denied to the complainant and other public service corporations notice of and an opportunity for a hearing upon the assessment of their property, and an opportunity to have their property equalized with that of other taxpayers, opportunities which were accorded to other taxpayers, and that the taxing officers assessed their property at its full value and the property of other taxpayers at 63½ per cent. of its value, whereby they were deprived of the equal protection of the laws and their property was about to be taken without due process of law. The bill also contained an allegation that the complainant was willing to pay into court any amount justly owing, to secure the payment of that amount by a bond, and to let the $29,715.73, which it had already paid, stand as security therefor. These allegations of the bill brought it far within the rule of equity requiring allegations of the tender, payment, or security for the payment of the part of taxes justly due, and there was no error in the overruling of the demurrer and the issue of the temporary injunction.

The state of Oklahoma came into existence on November 16, 1907. The Legislature of that state, evidently under the belief that there was no legislation under which taxes could be lawfully collected for state, county, and other public purposes, passed an act, approved April 17, 1908 (Laws 1907–08, c. 71), entitled "An act providing for the assessment for taxation for state, county, city, town, township and school purposes for the fiscal year ending July 1, 1908, and for the deficiency for the fiscal year ending July 1, 1908, providing for the levy of such tax and declaring an emergency," whereby it provided that (section 7) "there is hereby levied an ad valorem tax upon all property in this state which may be subject to taxation upon such basis, a tax sufficient, in addition to income from all other sources to pay the expenses of the state government for the fiscal year ending on the 30th day of June, 1908, and to pay the deficiency for the fiscal year ending on the 30th day of June, 1908: Provided, however, that the total amount of such levy shall not exceed one and one-half mills on the dollar of valuation," and that the state board of equalization should meet and compute the amount necessary to be levied for this period and these purposes, which should be certified to the county clerks of the respective counties to be entered on the tax rolls. Pursuant to this act the board on October 1, 1908, made the computation and adjudged that there should be a levy of 1¼ mills upon a dollar of the valuation of all the taxable property in the state to pay seven specific items of state expenses, one of which was $1,140,000 expense of the state for the full fiscal year from July 1, 1908, to June 30, 1909.

It seems to be too plain for discussion that no authority was here granted to this board to compute and levy any tax to pay any of the expenses of the state for the year ending June 30, 1909. The power is expressly limited to fixing the rate and levying the taxes for the expenses and deficiency for the year ending June 30, 1908. Counsel for the state contended, however, that this levy for the year 1909 was authorized by the laws of the territory of Oklahoma on this subject, which he asserted were continued in operation in the state by virtue of section 2 of the Schedule to the Constitution of Oklahoma, which reads, "All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation, or are altered or repealed by law," and it is assigned as error that the court below overruled this contention. and held (1) that, if the territorial laws on this subject were in force in the state, the levy was not made in accordance with them, and was made without authority from them; (2) that these laws were repugnant to the Constitution of the state and were never in force therein.

[2] Regarding the question whether or not the levy was made in disregard of, and hence without authority from, the laws of the territory, counsel first argues that this issue is not presented by the pleadings, because they concede that the levy for the fiscal year 1909 was made by the board, the legal presumption is that this levy was

valid, and hence according to the laws of the territory, and there is no averment in the bill that there was any failure so to make it. Let us examine the pleadings, and see if this is the condition in which this case stands. This issue was submitted and decided in the court below on bill, answer, and replication without evidence. When a case is set down for hearing on bill, answer, and replication, only those averments of the answer which are responsive to the bill are taken as true. All allegations in avoidance or justification are denied by the replication and are taken as untrue. People's United States Bank v. Gilson, 161 Fed. 286, 292, 88 C. C. A. 332; Van Dyke v. Van Dyke, 26 N. J. Eq. 180, 181; Humes v. Scruggs, 94 U. S. 22, 24, 24 L. Ed. 51; Jacks v. Nichols, 5 N. Y. 178; Wilkinson v. Bauerle, 41 N. J. Eq. 635, 7 Atl. 514; Lucas v. Bank of Darien, 2 Stew. (Ala.) 280. The complainant alleged in its amended bill that the challenged taxes were raised under the act of April 17, 1908, and were therefore illegal and void. It set forth the resolution of the state board of equalization which fixed the rate and made the levy on October 1, 1908, and alleged that these were made as so set forth and were wholly void. The defendants answered that they admitted that the taxes in controversy were raised under authority of the act of April 17, 1908, and under other laws and the Constitution of the state, pursuant to section 3, art. 10, of the Constitution of the state and the laws of the territory of Oklahoma, and that the complainant had correctly set forth in its amended bill the resolution of the board which fixed the rate and made the levy. A replication was filed to this answer, and upon these pleadings the issue was determined. It will be noticed that the defendants admitted that the levy was made under the act of April 17, 1908, and that they admitted, but did not aver, that it was made under the section of the Constitution and the territorial laws cited. The admission raised no issue, and the concession was that the levy was made under the authority of the act of April 17, 1908. Nor would the result have been different if the defendants had averred that the levy was made under and pursuant to section 3, art. 10, of the Constitution and the laws of the territory, because this was matter in avoidance or justification of the allegation of the bill that it was made under the authority of the act of April 17, 1908, and was therefore void, and hence this averment of the answer would have been denied by the replication, and must have been taken as untrue on the hearing upon bill, answer, and replication. If, therefore, this issue is determinable by the rules of pleading and practice in equity, which defendants' counsel so earnestly invoke, there was no error in its decision by the court below.

[3, 7] But the courts of the United States take judicial notice of the Constitution and laws of the states, and this levy ought not to be stricken down in equity if it was authorized by any of the provisions of those laws and that Constitution. As has already been stated, it is clear that the board of equalization was not empowered by the terms of the act of April 17, 1908, to fix any rate or make any levy of taxes for the expenses of the state for the fiscal year ending June 30, 1909, because the power there granted to that board is expressly lim-

ited to the fixing of the rate and making of the levy "to pay the expenses of the state government for the fiscal year ending on the 30th day of June, 1908, and to pay the deficiency for the fiscal year ending on the 30th day of June, 1908." Defendants' counsel contend that this authority may be found in the territorial laws, and in section 3, art. 10, of the Constitution of Oklahoma, which reads:

"Whenever the expenses of any fiscal year shall exceed the income the Legislature may provide for levying a tax for the ensuing fiscal year, which, with other resources, shall be sufficient to pay for the deficiency as well as the estimated ordinary expenses of the state for the ensuing year."

But this section authorized the Legislature only, and by the terms of its grant impliedly prohibited the board, without express legislative authority, from making such a provision, and the Legislature by the act of 1908 made provision for levying a tax, and granted to the board authority to lay it for the expenses and deficiency of the year ending June 30, 1908, but withheld and thereby impliedly prohibited the board from exercising any authority to fix the rate or levy the tax for the expenses of the year ending June 30, 1909. There was, therefore, no power in the board, under section 3 of article 10 of the Constitution and the act of 1908, to make any levy of taxes for the expenses of the state for the year ending June 30, 1909.

The levy for 1909 was made on October 1. 1908, without authority in the board to make it under the act of 1908. Conceding, but not admitting, that the territorial laws on this subject continued in force in the state under section 2 of the schedule to the Constitution, was there error in the conclusion of the court below that this levy was beyond the powers of the board under those laws?

If those laws were applicable to this levy, they provided (section 5994, Wilson's Statutes of Oklahoma of 1903) that the board of equalization should hold a session commencing on the third Monday in June, 1908, and should decide on the rate of territorial tax to be levied for the current year; by section 5996 that on or before the fourth Monday in June, 1908, the territorial auditor should transmit to the county clerk of each county a statement of the rate of taxation for the general territorial tax as directed to be levied and collected by the territorial board of equalization, and that if the board failed to fix the rate the auditor should notify the clerk of each county of the rate; and by sections 5997 and 5998 that the county commissioners should meet the third Friday in July, 1908, to make levies for county purposes, that they might adjourn for not exceeding 10 days, and that if no statement of the rate of the levy for the territorial tax was received during their session they should, before adjourning, levy the general territorial tax at the rate of 2 mills on the dollar. The admitted fact that the rate in this case was fixed and the levy made by the board on October 1, 1908, renders it impossible that they could have been made under or in accordance with these territorial laws, because all the powers of the board and all the powers of the other officers under these territorial laws to make or certify the rate or levy the tax for the year ending June 30, 1909, had, by the terms of

these laws, entirely ceased long before the date on which this rate was fixed and this levy made.

The fact that section 8 of the act of April 17, 1908, authorizes the board of county commissioners to meet on the third Monday in September, 1908, to make a levy of taxes for county purposes for the year ending July 1, 1909, and to adjourn not exceeding 10 days, has not been overlooked. It is, however, immaterial, because it makes no provision for or in relation to a levy or a rate for that year for state purposes, and because the levy in hand was not made by the county commissioners. If it had been, it must have been 2 mills on the dollar for the year ending June 30, 1909, and this levy was 1¼ mills for 19½ months, including the 12 months of the fiscal year ending June 30, 1909. The unavoidable conclusion is that, admitting that the territorial laws upon this subject were in force at the time of the levy by the state board of the taxes here in question, that board was then without power under the Constitution of Oklahoma and the territorial laws, and it was also without power under the act of April 17, 1908, to fix the rate for, or to levy any taxes for, the expenses of the state for the year ending June 30, 1909, and there was no error in the decision of the court below that to that extent the levy in question was ultra vires and void.

This result makes it unnecessary to discuss the question whether these territorial laws continued in force in the state of Oklahoma or were so repugnant to the state Constitution that they ceased to have effect after statehood. Suffice it to say that the majority of the court concurs in the opinion of the court below upon this issue also.

After the court had found that the levy for the taxes of the year ending June 30, 1909, was unauthorized, and that the amount of those taxes might be separated from the amount levied for the 7½ months ending June 30, 1908, it set aside the submission of the case, permitted evidence to be taken, found the amount levied for each period, the railway company paid the amount levied for the 7½ months, and the decree for the injunction was rendered. Defendants specify as error the admission of the deposition of R. C. Cain, chief of the accounting office of the State Auditor's office, over the objection that it was irrelevant, incompetent, immaterial, and not responsive to any questions in the pleadings in the cause. But some parts of the deposition, notably those which stated that the State Auditor was out of the state, and that the witness had charge of all the accounts in the Auditor's office, including the account of the revenues received by the state from other than direct taxation, were neither incompetent, irrelevant, nor immaterial, and they and the testimony the witness gave relative to the amount of revenue derived from sources other than direct taxation during the year ending June 30, 1908, were responsive to the issue made by the pleadings, whether the valid and the void taxes were inextricably mingled, and to the order of the court that the parties might take evidence to show what part of the taxes levied ought to be paid.

[4] Some of the testimony in this deposition was not the best evidence, because it was deduced from the account books, and they were

better evidence than the statement of their contents by the witness; but objection was not made on this specific ground, and there was no error in overruling the objections to the entire deposition because parts of it were admissible. Objections to the introduction of an entire deposition are untenable, if any part of it is admissible in evidence.

It is assigned as error that in the separation of the valid from the void taxes the court erred in attributing and crediting to the period from November 16, 1907, to June 30, 1908, any part of the $845,000 which the state board estimated would be derived from sources other than ad valorem taxation. But this assignment is baseless, because the resolution by which the rate was fixed and the levy made itself establishes the fact that this $845,000 was credited by the board to the entire period from November 16, 1907, to June 30, 1909, and there was plenary evidence that the state derived revenue from sources other than ad valorem taxation during the time between November 16, 1907, and June 30, 1908, and the board must have known that fact and taken it into consideration in its estimate.

[5] Finally, complaint is made because the court did not require the railway company to pay 18 per cent., but required it to pay only 6 per cent., per annum upon the portion of the taxes found to be justly due as a condition of the grant of the preliminary injunction. There was, however, no error here, because the state was demanding all these taxes, valid and void. No one could determine what part was valid or what part was void until the court adjudged the division. The 18 per cent. interest per annum upon taxes delinquent, imposed by section 6013 of Wilson's Statutes of Oklahoma of 1903, was in the nature of a penalty for the failure to pay the taxes when due. One who would enforce a penalty for the failure to pay a claim must demand the true amount. If he demands a larger amount no penalty is incurred.

[6] Moreover, subject to the established principles and rules of equity jurisprudence, the terms on which the chancellor below should grant relief to the complainant and issue his injunction were in his judicial discretion, and his action was not violative of any of those principles or rules, nor was it an abuse of his discretion. Atchison, Topeka & Santa Fé Ry. Co. v. Sullivan, 173 Fed. 456, 471, 97 C. C. A. 1.

The motion to dismiss the appeal in this case is not considered, because the conclusion reached upon the merits has the same effect as would a grant of that motion.

The railway company appealed from the decree, but at the argument waived its objections thereto. Let the appeal of the railway company be dismissed, with costs, and let the decree of the court below be affirmed, with costs, against the treasurer and the sheriff.